**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James R. PAVLOSKI,
Defendant-Appellant.**

**No. 77-2042.**

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1978.
Decided May 5, 1978.

---

Ralph A. Kalal, Madison, Wis., for defendant-appellant.

John A. Franke, Asst. U. S. Atty., Madison, Wis., for plaintiff-appellee.

Before SWYGERT and TONE, Circuit Judges, and JAMESON, Senior District Judge.*

* The Honorable William J. Jameson, Senior District Judge of the United States District Court for the District of Montana, is sitting by designation.

TONE, Circuit Judge.

Two issues are presented in this direct appeal of a judgment of guilty under an indictment charging the defendant with embezzling and converting union funds, 29 U.S.C. § 501(c) (Count I), and making false statements of material facts in a labor organization annual report, 29 U.S.C. § 439(b) (Counts II and III): First, whether by writing and cashing forged checks on the local union's bank account the defendant embezzled or converted funds of the union, or only funds of the bank. Second, whether Count I of the indictment, which charged embezzlement by both presenting forged checks to the bank and converting cash dues and initiation fees belonging to the union, should be dismissed on the ground that it is duplicitous. We decide both of these issues against the defendant and therefore affirm the judgment.

James R. Pavloski was, during all relevant times, the Treasurer of Local No. 195 of the United Paper Workers International Union. The funds of the local union (hereinafter "the union") were deposited in a checking account with the Wood City National Bank of Wisconsin Rapids. The account contract between the union and the bank required that checks be signed by both Pavloski and the union president.

Pavloski converted to his own use cash received by him as treasurer of the union as dues and initiation fees. In addition, on twenty-three separate occasions between November 1972 and September 1975, Pavloski signed his own name and also forged the union president's signature on a union check and then presented the check to the bank for payment. The bank, not detecting the forgeries, honored the checks, paid Pavloski, and debited the union's account. The union failed to detect the forgeries when it received its periodic bank statements and canceled checks, which was not surprising since Pavloski, as the union's treasurer, looked after the account.

## I.

In arguing that the check forging activities did not constitute embezzling or converting moneys and funds of the union, Pavloski relies on the commercial law doctrine (*Price v. Neal*, 3 Burr. 1354, 97 Eng. Rep. 871 (K.B.1762)) now codified in Wis. Stats. §§ 403.418, 404.213 and 404.401, adopting U.C.C. §§ 3–418, 4–213 and 4–401, that a drawee bank pays its own funds, not those of its depositor, when it honors a forged check. Because of this doctrine, he argues, in legal effect he did not embezzle the union's funds, but rather converted funds of the bank.

Similar arguments have been rejected in cases brought under 18 U.S.C § 641 when, as here, the check itself, the piece of paper, is the property of the drawer, on the ground that the appropriation of "property" consisting of the piece of paper is enough to satisfy the statute. *United States v. Lee*, 454 F.2d 190, 192 (9th Cir. 1972); *Clark v. United States*, 268 F. 329, 330–332 (6th Cir. 1920). *Lee* was distinguished in *United States v. Collins*, 464 F.2d 1163, 1165 (9th Cir. 1972), in which the majority did not view the commercial paper involved as property of the United States and relied upon the commercial law principle that the bank pays its own funds when it honors a forged check. *Collins* was later distinguished by the Ninth Circuit itself in a case in which the check was the property of the government, *United States v. Miller*, 520 F.2d 1208, 1209–1210 (9th Cir. 1975), and is likewise distinguishable from the case at bar, because here Pavloski did appropriate check forms belonging to the union, whose property he is charged with converting. It is true that the indictment here did not allege, as it might have, the conversion of "property," but only "moneys and funds." The term "funds," however, includes commercial paper. Webster's *Third New International Dictionary* 921 (1972). When the checks were completed by Pavloski and ready for presentation, they constituted commercial paper belonging to the union. By appropriating them, he converted funds of the union.

Moreover, "funds" of the union were converted to the use of Pavloski when the bank debited the account of the union, as it did

when each forged check was honored. That these reductions in funds were temporary would not exonerate Pavloski from liability, although in any event it appears unlikely that the union would be able to recover from the bank in view of its delay in discovering the forgeries and reporting them to the bank. See Wis.Stats. § 404.406(2)(b), adopting U.C.C. § 4-406(2)(b); *cf. Wussow v. Badger State Bank*, 204 Wis. 467, 471, 234 N.W. 720, 721 (1931).

The common law doctrine on which Pavloski relies does not, therefore, place his conduct outside the statute or the indictment. Our decision is consistent, we note, with *United States v. Daley*, 454 F.2d 505, 509–510 (1st Cir. 1972), where the court rejected without extended analysis an argument similar to Pavloski's.[1]

## II.

 Pavloski also argues that Count I of the indictment, charging the converting and embezzling by means of the forged checks and skimming cash dues and initiation fees, is duplicitous. Rule 7(c), Fed.R.Crim.P., however, provides that a single count may allege "that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means." Ordinarily embezzlement is accomplished by "several separate transactions [that] may form a single, continuing scheme, and may therefore be charged in a single count." *United States v. Daley, supra*, 454 F.2d at 509. *Cf. United States v. Isaacs*, 493 F.2d 1124, 1154–1155 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974).

 Rule 7(c) necessarily contemplates that two or more acts, each one of which would constitute an offense standing alone, may be joined in a single count. The rule does not, however, sanction "duplicity," which is "the joining in a single count of two or more distinct and separate offenses." *United States v. Starks*, 515 F.2d 112, 116 (3d Cir. 1975). When the offenses joined

bear a relationship to one another and may be said to constitute a continuing course of conduct, the "distinct and separate" test should be applied, not as a metaphysical exercise, but with a view toward serving the purposes of the prohibition against duplicity. Those purposes, as *Starks* states, are prevention of double jeopardy, of prejudice with respect to evidentiary rulings during trial, and of conviction by a verdict that is not unanimous. *Id.* at 116–117. Only the last is of conceivable applicability here. Is there a substantial danger that, although all jurors found Pavloski guilty of at least one act charged, they did not all agree as to which act? Theoretically there is a possibility that this may occur whenever several criminal acts are joined pursuant to Rule 7(c), and therefore such a question usually cannot be answered without reference to the specific case under consideration. The Fifth Circuit, speaking only of the requirement of unanimity without mentioning duplicity, recently held that an instruction, given over objection, that expressly permitted a verdict based on inconsistent findings by individual jurors was reversible error. *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977). No such instruction was given here, and in the absence of the tender by the defendant of an appropriate instruction to the effect that the jurors must agree on at least one act, we are not inclined to hold that the general instruction on the necessity of unanimity was insufficient. Moreover, in the case at bar the defense did not dispute that Pavloski did all the acts charged, which were proved beyond peradventure, but denied only that he possessed the mental state required for violation of the statute. There was therefore no possibility of prejudice through lack of unanimity.

The judgment of conviction is affirmed.

AFFIRMED.

---

1. Pavloski's arguments regarding jury instructions and the denial of a motion in limine are subsumed in the issue discussed in the text.