**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ronald Ted ALSOBROOK and George
Alvin Rolls, Defendants-Appellants.**

Nos. 79-5226, 79-5227.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 1, 1980.

Decided May 22, 1980.

Neil H. Fink, Detroit, Mich., for defendant-appellant in 79–5226.

John J. McDonald, William Wolfram, Farmington Hills, Mich., for defendant-appellant in 79–5227.

James K. Robinson, U. S. Atty., Leah Simms, Special Atty., Dept. of Justice, Detroit, Mich., for plaintiff-appellee in both cases.

Before EDWARDS, Chief Judge, and CELEBREZZE and BROWN, Circuit Judges.

BAILEY BROWN, Circuit Judge.

The defendant, Ronald Alsobrook, was convicted of traveling in interstate commerce with the intent to carry on an unlawful gambling activity in violation of the Travel Act, 18 U.S.C. § 1952. The defendant, George Rolls, was convicted under 18 U.S.C. § 2 of aiding and abetting Alsobrook. Both defendants appeal.

I

The evidence introduced at the defendants' trial, viewed in the light most favorable to the government, established the following facts. Throughout the fall of 1977, Alsobrook operated an illegal bookmaking business in Michigan. Sometime prior to October, 1977, however, Alsobrook moved at least part of his family from Michigan to California so that his daughter, an excellent swimmer, could train for the 1980 Olympics.

On October 28, 1977, FBI agents observed Alsobrook being picked up at the Detroit airport by a friend in a car that, subsequent investigation revealed, was rented by Rolls. Alsobrook registered at a local hotel where he listed his residence as Mission Viejo, California. After conducting his bookmaking operation and using this car leased by Rolls over the weekend, he was driven to the airport in it on Monday, October 31. Alsobrook was subsequently seen boarding a flight leaving Detroit.

On December 8, 1977, FBI agents in Los Angeles observed Alsobrook boarding a flight bound for Detroit. Upon his arrival in Detroit, Alsobrook followed the same routine that he established in October. He was picked up at the airport in the car rented by Rolls, registered at the hotel as a resident of California, operated his bookmaking business over the weekend and then was dropped off at the airport in the car rented by Rolls.

Additional proof was introduced showing a pattern of travel by Alsobrook from California to Michigan and then returning to California. Several airline tickets reflected these weekend trips. On each occasion, Alsobrook followed the same routine once he reached Detroit.

The exact role of Rolls in the gambling operation was never clearly established. Several witnesses, however, testified that they had placed bets with either Alsobrook or Rolls in the fall of 1977 and that one of the defendants, not necessarily the one who had initially accepted the bet, had subsequently collected or paid the bet. Moreover, telephone records indicated that Alsobrook called Rolls on several occasions during his visits to Michigan. Rolls never personally met Alsobrook at the airport, but on each of his visits, as stated, Alsobrook was picked up in a car rented by Rolls.

From this evidence, the jury could have reasonably concluded that Alsobrook traveled in interstate commerce on October 28 and December 8 with the intent to conduct an illegal bookmaking operation in Michigan and that he subsequently operated that bookmaking enterprise.[1] In addition, on the basis of Rolls' connections with the bookmaking operation and the use of the car leased to him by Alsobrook, the jury could have reasonably concluded that Rolls had knowledge of the interstate travel by

---

1. The principal defense of Alsobrook at his trial was that he remained a resident of Michigan throughout the fall of 1977 and that therefore his travel from California to Michigan was for the purpose of returning home. On this basis, Alsobrook contended that he did not travel with the intent to promote an illegal business enterprise. We believe that there was sufficient evidence from which the jury could have concluded that Alsobrook stayed primarily in California and flew to Michigan on weekends to conduct his bookmaking operation. Under these circumstances, the legal residence of Alsobrook would appear irrelevant.

Alsobrook[2] and that he acted to facilitate that interstate travel. Accordingly, we believe that the evidence introduced at the defendants' trial was sufficient to sustain the convictions of both defendants, absent some prejudicial error in the rulings of the district court. Alsobrook and Rolls have raised different issues in challenging those rulings.

## II

Alsobrook contends that the indictment was duplicitous and therefore invalid. The indictment consisted of a single count charging a violation of the Travel Act. The count contained two paragraphs. The first paragraph alleged that "on or about September 1, 1977, and continuously thereafter," Alsobrook traveled in interstate commerce with the intent to aid unlawful gambling activity. The second paragraph listed six dates on which Alsobrook allegedly traveled between California and Michigan "as part of and in willful promotion of said unlawful activity."[3]

Our initial problem is one of construction. Alsobrook maintains that the indictment should be construed to allege a single act of interstate travel that occurred "on or about September 1, 1977." While some of the language in the indictment supports such an interpretation, the fairer interpretation of the indictment is that it alleges a continuing course of interstate travel consisting of the specific travel dates listed in the second paragraph of the indictment. Construed in this manner, the critical issue is whether the inclusion of more than one act of interstate travel in a single count rendered the indictment duplicitous.

█ Under the Travel Act, each act of interstate travel and each use of an interstate facility constitutes a punishable offense. *United States v. Polizzi*, 500 F.2d 856, 898 (9th Cir. 1974). Thus, the grand jury could have indicted Alsobrook in separate counts for each of his trips to Michigan. If the prosecution had drafted the indictment in this manner, Alsobrook would have been exposed to the possibility of a more severe penalty. Instead, however, the prosecution elected to characterize the actions of Alsobrook as a continuing course of conduct that represented only a single offense.

█ Several courts have upheld the validity of indictments that consolidate several acts into a single count when such acts represent a single, continuing scheme that occurred within a short period of time and that involved the same defendant. *See United States v. Girard*, 601 F.2d 69 (2nd Cir. 1979); *United States v. Pavloski*, 574 F.2d 933 (7th Cir. 1978); *Cohen v. United States*, 378 F.2d 751 (9th Cir.), *cert. denied*, 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). The determination of whether a group of acts represents a single, continuing scheme or a set of separate and distinct offenses is a difficult one that must be left at least initially to the discretion of the prosecution. This discretion, however, is not without limits. *See e. g., United States v. Tanner*, 471 F.2d 128 (7th Cir. 1972). Ultimately, the indictment must be measured in terms of whether it exposes the defendant to any of the inherent dangers of a duplicitous indictment. *See United States v. Pavloski, supra.* Those dangers include the possibility that the defendant may not be properly notified of the charges against him, that he may be subjected to double jeopardy, that he may be prejudiced by evidentiary rulings during the trial, and that he may be convicted by a less than unanimous verdict. If any of these dangers are present, the acts of the defendant should be separated into different counts even though they may represent a single, continuing scheme.

█ In this case, we believe that the government's characterization of the facts

---

2. We discuss, *infra*, the necessity of proving actual knowledge by Rolls.

3. Four of these travel dates involved trips from Michigan to California. These dates were stricken from the indictment at the conclusion of the proof for the reason that the government had failed to show any acts by Alsobrook while in California that furthered any unlawful activity.

as a single, continuous scheme was a fair one. Moreover, none of the dangers of duplicity were present in this case. The government's theory of prosecution was sufficiently clear to provide adequate notice of the charges against Alsobrook and to preclude any potential for double jeopardy. The indictment did not create any evidentiary problems as a result of the single count. Finally, the district court, by instructing the jury that it must reach a unanimous decision on at least one act of interstate travel, obviated any possibility of a conviction based on a less than unanimous verdict.

Accordingly, we conclude that the indictment in this case was neither duplicitous nor otherwise prejudicial. We find it difficult to criticize the government's exercise of discretion when it redounds to the benefit of the defendant as it did in this case. More importantly, however, we are hesitant to create an inflexible rule that would force the government to charge each punishable act as a separate count and thereby to cumulate both offenses and possible punishments.

We have considered the remaining issues raised by Alsobrook and find them without merit. We therefore affirm the conviction of Alsobrook.

### III

Rolls contends that the district court erred in instructing the jury that it could find Rolls guilty as an aider and abettor if "he knew or should reasonably have known that Ronald Alsobrook was engaged in interstate movement or using a facility in interstate commerce." Rolls maintains that the government was required to prove that he had actual knowledge of Alsobrook's interstate travel.

The Travel Act was originally enacted to provide a means by which the federal government could aid state officials in controlling organized crime. It was directed specifically at members of organized crime who resided in one state and operated illegal enterprises in other states. *See United States v. Nardello*, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969). Despite this narrow purpose, however, the language of the Travel Act is quite broad.[4] *See United States v. Archer*, 486 F.2d 670 (2d Cir. 1973). In *Rewis v. United States*, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), the Supreme Court warned "that an expansive Travel Act would alter sensitive federal-state relationships." 401 U.S. at 812, 91 S.Ct. at 1059. On that basis, the Court held that interstate travel by customers of a gambling enterprise, even though reasonably foreseeable, was not sufficient to trigger the provisions of the Travel Act. But even after *Rewis*, the precise scope of the Travel Act remains in many respects undefined.[5]

The majority of the circuits have held that knowledge by a defendant of the inter-

---

4. The Travel Act, 18 U.S.C. § 1952, provides:
(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
(1) distribute the proceeds of any unlawful activity; or
(2) commit any crime of violence to further any unlawful activity; or
(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
(b) As used in this section "unlawful activity" means (1) any business enterprise involv-

ing gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.
(c) Investigations of violations under this section involving liquor shall be conducted under the supervision of the Secretary of the Treasury.

5. The Seventh and Second Circuits have held that the Travel Act does not extend to those uses of interstate facilities that are minimal and incidental to the operation of the illegal business. *United States v. Herrera*, 584 F.2d 1137 (2nd Cir. 1978); *United States v. Archer*, 486

state travel or of the use of an interstate facility by another is not an element of a violation of the Travel Act. *See United States v. McPartlin*, 595 F.2d 1321, 1361 (7th Cir. 1979); *United States v. Perrin*, 580 F.2d 730, 737 (5th Cir. 1978); *United States v. Villano*, 529 F.2d 1046, 1054 (10th Cir. 1976); *United States v. LeFaivre*, 507 F.2d 1288, 1298 (4th Cir. 1974); *United States v. Sellaro*, 514 F.2d 114, 120 (8th Cir. 1973); *United States v. Roselli*, 432 F.2d 879, 891 (9th Cir. 1970). These circuits therefore hold that all of the persons involved in an illegal business enterprise may be prosecuted under the Travel Act if any one of them travels in interstate commerce or uses an interstate facility. The Sixth Circuit, however, has adopted a more narrow interpretation of the Travel Act.

 On two separate occasions, in *United States v. Barnes*, 383 F.2d 287 (6th Cir. 1967), and in *United States v. Prince*, 529 F.2d 1108 (6th Cir. 1976), this court has reversed convictions under the Travel Act for the reason that the proof was insufficient to demonstrate that the defendant knew that another person involved in the illegal business enterprise was traveling in interstate commerce or was using interstate facilities. In both cases, it is true, the court employed language to the effect that the proof failed to show that the defendant "knew or reasonably should have known" of interstate travel or of the use of interstate facilities. We conclude, however, that under the law of this circuit as established by *Barnes* and *Prince*, it was necessary for a conviction of Rolls that the jury find beyond a reasonable doubt that Rolls had actual knowledge of Alsobrook's interstate travel. Even so, we believe that the charge was sufficient, though it would have been better to have charged that actual knowledge was necessary but that if the jury concluded from all the facts and circumstances that Rolls reasonably should have had such knowledge, it could conclude that he did have such knowledge. In any case,

in view of the strength of the government's proof as to the knowledge of Rolls that Alsobrook was traveling in interstate commerce, the alleged error in the charge was harmless.

The convictions of defendant Alsobrook in No. 79–5226 and defendant Rolls in No. 79–5227 are affirmed.

F.2d 670 (2nd Cir. 1973); *United States v. Altobella*, 442 F.2d 310 (7th Cir. 1971). This court, as well as the Fourth Circuit, has rejected this construction of the Act. *United States v. Eisner*, 533 F.2d 987 (6th Cir. 1976); *United States v. LeFaivre*, 507 F.2d 1288 (4th Cir. 1974).