STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Charles Joseph LOMAGRO, Defendant-Appellant.†

Supreme Court

*No. 81–2163–CR.  Argued March 31, 1983.—Decided July 1, 1983.*

(Also reported in 335 N.W.2d 583.)

For the petitioner there was a brief and oral argument by *Stephen W. Kleinmaier,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Donald T. Lang,* assistant state public defender.

---

† Motion for reconsideration denied, without costs, on September 19, 1983.

STEINMETZ, J.  This is a review of an unpublished decision of the court of appeals which reversed both the judgment of conviction for first-degree sexual assault entered by the circuit court for Milwaukee county, the Honorable Michael D. Guolee, Judge, and the order denying the defendant's motion for a new trial entered by the Honorable Ralph Adam Fine, Judge.  The issue on appeal is whether the defendant was denied his right to a unanimous jury verdict.

On November 3, 1980, the defendant, Charles Joseph Lomagro, and Chester L. Cyrus were each charged with one count of first-degree sexual assault, party to a crime, in violation of secs. 940.225(1)(c)[1] and 939.05, Stats. The testimony of the victim, C.G., and the defendant Lomagro at the trial as to the facts surrounding the incident was in substantial dispute.

C.G. testified that on the evening of October 31, 1980, she arrived with two friends at a bar on Milwaukee's south side at approximately 11:15 p.m.  While at the bar she met the defendant and Cyrus and talked to the two men for most of the evening.

Shortly after midnight C.G. noticed that her two friends had left the bar without her.  Cyrus and the defendant then offered C.G. a ride to meet her friends at the restaurant where she worked.  C.G. hesitated, but accepted the ride when the owner of the bar assured her that she knew the defendant and that he would get her home safely.  C.G. left the bar with the two men at approximately 12:30 or 12:45 a.m., and the three entered Cyrus's station wagon.  All three sat in the front seat

---

[1] Sec. 940.225(1)(c), Stats., provides:

"940.225 Sexual assault. (1) FIRST DEGREE SEXUAL ASSAULT. Whoever does any of the following is guilty of a Class B felony:

". . . .

"(c) Is aided or abetted by one or more other persons and has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence."

with C.G. in the middle between Cyrus, who was driving, and Lomagro who sat on the right passenger side.

Soon after they drove away C.G. agreed to accompany the two men to an east side bar. When she noticed that they were at the lakefront and had gone farther than their destination, she questioned the two men as to what was going on. The defendant responded by reaching down the front of C.G.'s dress and grabbing her breast. C.G. begged him to stop. The defendant told her to be quiet or he would blow her brains out with his gun. While the car proceeded along the lakefront, both men ripped the crotch area of C.G.'s jumpsuit and removed her pantyhose.

The defendant then forced C.G. to engage in an act of penis-vagina intercourse. They continued to drive and a short time later the defendant forced her to engage in another act of penis-vagina intercourse. During this second assault, C.G. attempted three times to throw open the passenger door. The defendant responded by slapping C.G.'s face, biting her nose and shoving her back in the car.

Cyrus then drove the car to an industrial area where he forced C.G. to engage in an act of penis-vagina intercourse. After leaving the area and while they were driving, Cyrus forced C.G. to perform an act of fellatio on him. Cyrus then drove the car to a gas station. While Cyrus put gas in the car, C.G. remained in the car with the defendant.

Upon leaving the gas station they proceeded to another secluded area and C.G. was forced to perform an act of fellatio on both men. The two men then agreed to release her. At about 3:00 a.m., she was taken to a friend's home.

The defendant acknowledged meeting C.G. at the south side bar and offering her a ride. His version of the subsequent events, however, was substantially dif-

ferent. He testified that they left the bar at approximately 1:00 a.m. and agreed to go to the east side bar. When they arrived at the bar, they decided not to stop because it appeared that the bar was emptying out. They then proceeded to take C.G. home, stopping only to get some gas. The defendant stated that they dropped C.G. off unharmed at her home between 2:00 and 2:15 a.m. He testified that neither he nor Cyrus had any sexual contact with C.G. and that neither man ever struck her.

Photographs of C.G. taken several days after the incident showed a variety of scratch marks and bruises. The jumpsuit worn by the victim was marked as an exhibit at trial and contained numerous holes with the whole crotch area ripped out. There was additional testimony by an employee of the State Crime Laboratory. He testified that there was sperm found on the victim's clothing and on her cervical and vaginal smears, but that her oral smears and swabs were negative.

Following the close of the evidence, the trial court instructed the jury on the elements of first-degree sexual assault, party to a crime. The court told the jury that both penis penetration into the vagina and fellatio constituted the element of sexual intercourse. The court gave the standard unanimity instruction as follows:

"This is a criminal, not a civil, case. Therefore, before the jury can return a verdict that can legally be received, your verdict must be reached unanimously. In a criminal case all twelve jurors must agree in order to arrive at a verdict."

The jury returned its verdict finding the defendant guilty of first-degree sexual assault. Following sentencing, the defendant filed a motion requesting a new trial on the grounds that his rights to due process and a unanimous verdict were violated. He contended that when the state presents evidence of separate crimes and charges only one count, the jury must agree as to the specific act that constituted the crime.

The trial court rejected this argument, finding that fellatio and penis-vagina intercourse were merely alternative ways of committing first-degree sexual assault and that jury unanimity was not required as to the different ways of committing a single criminal act. The court of appeals reversed, holding that the defendant's rights to due process and a unanimous verdict were violated. The court reasoned that in order to protect the defendant's right to a unanimous verdict when separate crimes are joined in one count, the jury must be instructed that it must unanimously agree that defendant committed one specific act of sexual intercourse. We granted the state's petition to review.

This review raises the issue of whether the defendant's right to a unanimous verdict was violated when he was charged with one count of first-degree sexual assault, but evidence was introduced of six different acts of non-consensual sexual intercourse. In order to resolve this issue, we first must determine whether the state may join several distinct acts of sexual intercourse into one count. The defendant contends that because the sexual assault charged in this matter consisted of six separately chargeable offenses, combining them in one count is duplicitous. The state argues that the prosecutor has the option to charge separate or multiple offenses when the separate acts are committed by the same person at substantially the same time.

Duplicity is the joining in a single count of two or more separate offenses. *State v. George,* 69 Wis. 2d 92, 99, 230 N.W.2d 253 (1975) ; *Harrell v. State,* 88 Wis. 2d 546, 555, 277 N.W.2d 462 (Ct. App. 1979). The purposes of the prohibition against duplicity are: (1) to assure that the defendant is sufficiently notified of the charge; (2) to protect the defendant against double jeopardy; (3) to avoid prejudice and confusion arising from evi-

dentiary rulings during trial; (4) to assure that the defendant is appropriately sentenced for the crime charged; and (5) to guarantee jury unanimity. *United States v. Alsobrook,* 620 F.2d 139, 142 (6th Cir. 1980), *cert. denied* 449 U.S. 843 (1980); *United States v. Pavloski,* 574 F.2d 933, 936 (7th Cir. 1978); *United States v. Starks,* 515 F.2d 112, 116–17 (3d Cir. 1975).

The first step in determining whether a criminal complaint is duplicitous is to examine its factual allegations to determine whether it states more than one offense. The complaint involved here alleged that the two co-defendants forced C.G. to engage in three acts of sexual intercourse.[2] The complaint characterizes the actions of the co-defendants in committing these sexual assaults as one continuous course of conduct resulting in one charge of first-degree sexual assault.

This court has consistently held that acts which alone constitute separately chargeable offenses, "when committed by the same person at substantially the same time and relating to one continued transaction, may be coupled in one count as constituting but one offense" without violating the rule against duplicity. *Huotte v. State,* 164 Wis. 354, 356, 160 N.W. 64 (1916); *Blenski v. State,* 73 Wis. 2d 685, 695, 245 N.W.2d 906 (1976). If the defendant's actions in committing the separate offenses may properly be viewed as one continuing offense, it is within the state's discretion to elect whether to charge "one continuous offense or a single offense or series of single offenses." *State v. George,* 69 Wis. 2d at 100. *See also, State v. Copening,* 103 Wis. 2d 564, 572, 309 N.W.2d 850 (Ct. App. 1981). This rule has been

---

[2] The complaint alleged that C.G. was forced to engage in one act of penis-vagina intercourse and one act of fellatio with Lomagro and one act of fellatio with Cyrus.

applied in other states to sex offenses. *See e.g., Steele v. State,* 523 S.W.2d 685, 686–87 (Tex. Cr. 1975).

However, this prosecutorial discretion to join separately chargeable offenses into one count is not unlimited. Rather, this discretion to join offenses is limited by the purposes of the prohibition against duplicity as discussed above. As stated by the Sixth Circuit in *United States v. Alsobrook,* 620 F.2d at 142–43:

> "Several courts have upheld the validity of indictments that consolidate several acts into a single count when such acts represent a single, continuing scheme that occurred within a short period of time and that involved the same defendant. *See United States v. Girard,* 601 F.2d 69 (2nd Cir. 1979); *United States v. Pavloski,* 574 F.2d 933 (7th Cir. 1978); *Cohen v. United States,* 378 F.2d 751 (9th Cir.), cert. denied, 389 U.S. 897, 88 S. Ct. 217, 19 L. Ed. 2d 215 (1967). The determination of whether a group of acts represents a single, continuing scheme or a set of separate and distinct offenses is a difficult one that must be left at least initially to the discretion of the prosecution. This discretion, however, is not without limits. *See e.g., United States v. Tanner,* 471 F.2d 128 (7th Cir. 1972). Ultimately, the indictment must be measured in terms of whether it exposes the defendant to any of the inherent dangers of a duplicitous indictment. *See United States v. Pavloski, supra.* Those dangers include the possibility that the defendant may not be properly notified of the charges against him, that he may be subjected to double jeopardy, that he may be prejudiced by evidentiary rulings during the trial, and that he may be convicted by a less than unanimous verdict. If any of these dangers are present, the acts of the defendant should be separated into different counts even though they may represent a single, continuing scheme.

> ". . . .

> ". . . We find it difficult to criticize the government's exercise of discretion when it redounds to the benefit of the defendant as it did in this case. More importantly, however, we are hesitant to create an inflexible rule that would force the government to charge each punish-

able act as a separate count and thereby to cumulate both offenses and possible punishments."

We also adopt this flexible rule that it is initially up to the state to determine the appropriate charging unit for a particular criminal episode. When separate criminal offenses of the same type occur during one continuous criminal transaction, the prosecutor may join these acts in a single count if they can properly be viewed as one continuous occurrence without violating 'the protections afforded the defendant by the rule against duplicity. The prosecutor must have this discretion at the charging stage to issue charges which coincide with the evidence available and the gravity of the particular course of conduct involved.

If a complaint joins several criminal acts which can properly be characterized as a continuing offense in one count and is challenged by the defendant on grounds of duplicity, the trial court must examine the allegations in light of the purposes of the prohibition against duplicity. Such a complaint may be found to be duplicitous only if any of these dangers are present and cannot be cured by instructions to the jury. If the complaint is found to be duplicitous, the state must then either elect the act upon which it will rely or separate the acts into separate counts.

Applying this analysis to the instant case, we find that the complaint was not duplicitous The acts alleged in the complaint were committed by the same two co-defendants in a short period of time and as part of one continuous criminal transaction. We believe that it was proper for the state to charge the defendant with one offense.

The defendant's only objection to the complaint on grounds of duplicity is that it violated his right to a

unanimous verdict.[3] This brings us to the underlying issue of this case. If the prosecutor issues only one charge but introduces evidence of multiple acts which separately constitute the criminal offense charged, must the jurors unanimously agree as to which act or acts the defendant committed in order to find the defendant guilty?

This court has long held that the right to a jury trial as guaranteed by the Wisconsin Constitution[4] includes the right to a unanimous verdict. *Holland v. State*, 91 Wis. 2d 134, 138, 280 N.W.2d 288 (1979), *cert. denied*, 445 U.S. 931 (1980); *Vogel v. State*, 138 Wis. 315, 332–33, 119 N.W. 190 (1909); *Boldt v. State*, 72 Wis. 7, 14–16,

---

[3] At oral argument counsel for the defendant stated that none of the other dangers potentially arising from a duplicitous complaint were present in this case.

The defendant never raised the issue of duplicitous charging until he was before this court in this review. Such an objection is waived if not raised before the trial court. *Lampkins v. State*, 51 Wis. 2d 564, 570, 187 N.W.2d 164 (1971); sec. 971.31(2), Stats. However, we have discussed this issue because of its interrelation to the issue of the defendant's right to a unanimous verdict.

[4] Art. I, secs. 5 and 7 of the Wisconsin Constitution provide:

"**Trial by jury; verdict in civil cases.** SECTION 5. [*As amended Nov. 1922*] The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute provide that a valid verdict, in civil cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof."

"**Rights of accused.** SECTION 7. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law."

38 N.W. 177 (1888). The principal justification for the unanimity requirement is that it ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense. Commentators have viewed the requirement as one that compels jurors to carefully examine the evidence presented in order to reach a consensus. Notes, *Constitutional Law—Criminal Procedure—Jury Instructions and the Unanimous Jury Verdict*, 1978 Wis. L. Rev. 339, 349. While it is clear that a unanimous verdict is required, "substantial doubt exists as to what the jury has to be unanimous about." *Manson v. State*, 101 Wis. 2d 413, 433, 304 N.W.2d 729 (1981) (Abrahamson, J. concurring).

Any discussion regarding unanimity must begin with a consideration of *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977). It is the leading case on the requirement of jury unanimity, and this court has adopted its analysis when deciding jury unanimity issues. *Manson*, 101 Wis. 2d at 429, n. 6.

Gipson was convicted of violating 18 U.S.C. sec. 2313. That statute imposes criminal liability on one who "receives, conceals, stores, barters, sells or disposes of" a stolen vehicle in interstate commerce. In response to a jury request for additional instructions, the judge charged the jury that it could find the defendant guilty without unanimously agreeing on which of the six acts prohibited by the statute he had committed. The jury returned a guilty verdict.

The Court of Appeals for the Fifth Circuit reversed the conviction. The court reasoned that where a statute can be violated by different acts, a "prerequisite of jury consensus as to the defendant's course of action" is required to ensure a unanimous verdict. *Gipson*, 553 F.2d at 458. After examining the statute, the court noted that

the six prohibited acts fell into two distinct conceptual groupings. The conceptual group of "receiving, concealing, and storing" was viewed as a "housing" *actus reus*.[5] The other group of "bartering, selling, and disposing" was viewed as a "marketing" *actus reus*. The court reasoned that acts within each group were "sufficiently analogous" to each other so that the jury did not have to agree on which of the intragroup acts the defendants committed in order to achieve a unanimous verdict. Since some jurors may have believed that Gipson "housed" a stolen vehicle and others that he "marketed" a stolen vehicle, the court concluded that he was denied a unanimous verdict and deserved a new trial.

In *Manson v. State,* 101 Wis.2d 413, this court following the logic of *Gipson,* adopted the following analysis for determining whether a defendant's right to a unanimous jury verdict has been denied. The first step is to determine whether the jury has been presented with evidence of multiple crimes or evidence of alternate means of committing the *actus reus* element of one crime. If more than one crime is presented to the jury, unanimity is required as to each. *Id.* at 419. If there is only one crime, jury unanimity on the particular alternative means of committing the crime is required only if the acts are conceptually distinct. Unanimity is not required if the acts are conceptually similar. *Id.* at 419, 428–30.

This defendant was charged with one crime of first-degree sexual assault. The evidence of the acts of nonconsensual sexual intercourse constitutes alternative means of committing that crime. The next step under *Manson* then is to determine whether the six acts of sexual intercourse were conceptually similar.

---

[5] *Actus reus* denotes such result of human conduct as the law seeks to prevent. *See generally* J. Hall, General Principles of Criminal Law (2d ed. 1960).

Sexual intercourse is defined for purposes of the sexual assault statutes in sec. 940.225(5)(b), Stats. That section states:

"(b) 'Sexual intercourse' includes the meaning assigned under s. 939.22(36) as well as cunnilingus, fellatio or anal intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by the defendant or upon the defendant's instruction. The emission of semen is not required."

By reference vulvar penetration (sec. 939.22(36)) is included in sec. 940.225(5)(b) and, therefore, both forms of the defendant's behavior, penis-mouth and penis-vulvar penetration, are sexual intercourse.

In *State v. Baldwin*, 101 Wis. 2d 441, 450, 304 N.W.2d 742 (1981), this court stated that the "proper application of the *Gipson* rationale is not dependent upon the conceptual dissimilarity, but rather the conceptual similarity of the conduct." The multiple acts of penis-vagina intercourse and fellatio that occurred during the one continuous carnal invasion of the victim's body are conceptually similar. The acts all involve the penetration of an orifice of the victim's body.

We recognize that a reasonable person could believe that penis-vagina intercourse and fellatio are conceptually distinct, since the acts involve different orifices of the victim. However, in our view, such an argument has been foreclosed by the legislature. By specifically defining what acts constitute sexual intercourse in sec. 940.225(5)(b), Stats., the legislature has in effect performed the conceptual grouping as a matter of public policy. By grouping the acts together under one definition, the legislature chose not to distinguish between the cruelty and effect caused by the acts on a victim and has already determined that the acts are conceptually similar.

Recently in *State v. Giwosky*, 109 Wis. 2d 446, 326 N.W.2d 232 (1982), we considered the issue of jury unanimity as applied to battery. In *Giwosky*, the defendant was charged with one count. At trial, evidence was presented that demonstrated that the victim was injured as a result of a thrown log and then punches and kicks during a fight with the defendant. The court observed that the encounter lasted only a few minutes with no "break in the action" and concluded that it was proper for the jury to consider the incident as one continuous event.

In *Giwosky*, we held:

"[T]he unanimity requirement was satisfied by the instruction that the jurors must agree that the defendant intentionally committed an act which caused bodily harm to the defendant [victim]. The defendant's actions during the brief encounter are not practically or legally separable or distinct." *Id.* at 458.

The rationale of *Giwosky* is applicable to this case. The fact that the encounter in this case lasted two hours and only a few minutes in *Giwosky* is not legally significant. Both encounters were one continuous, unlawful event and chargeable as one count. The *Giwosky* jury was not required to unanimously agree which blow by the defendant caused injury to the victim because the court concluded that there was no conceptual distinction between the throwing of the log and punches and kicks. Unanimity was achieved "[a]s long as the jury agreed that the defendant intentionally committed an act which caused physical harm." *Id.* at 458. There is no more of a conceptual distinction between being injured by a thrown log, a punch or a kick, than being sexually assaulted by penetration into different orifices. In this case unanimity was achieved, since the jury agreed that a sexual assault was committed.

The instruction given in the instant case, which was similar to the one given in *Giwosky,* was sufficient to assure a unanimous verdict. The relevant parts of the instructions were:

"The first element requires that the defendant had sexual intercourse with [C.G.]. Sexual intercourse means any penetration by the penis of a male into the genital organs of a female. If there is any such penetration, no matter how slight, then there is sexual intercourse, and it is immaterial whether the sexual act proceeded any further. Sexual intercourse requires only vulvar penetration and does not require emission. There must be some penetration to constitute the crime, but a very slight actual penetration is sufficient; the engagement of the sexual organs at all, beyond surface contact, is sexual intercourse. Sexual intercourse includes fallatio [sic]. Fallatio [sic] is oral stimulation of the penis. Emission is not required.

" . . . .

"This is a criminal, not a civil, case. Therefore, before the jury can return a verdict that can legally be received, your verdict must be reached unanimously. In a criminal case all twelve jurors must agree in order to arrive at a verdict."

We hold the instructions given under the facts of this case sufficient for the jury to return a unanimous verdict that the defendant was guilty of violating sec. 940.-225 (1) (c), Stats. The critical facts in this case are that the defendant testified that neither he nor the co-defendant engaged in any sexual acts with the victim, while the victim testified that the defendant performed three sexual assaults and aided and abetted three other assaults within the confines of a car over a two-hour period. The jury chose to believe the victim making it unnecessary for it to be unanimous about each specific act. As we stated in *Holland v. State,* 91 Wis. 2d 134, 143: "Unanimity is required only with respect to the

ultimate issue of the defendant's guilt or innocence of the crime charged."

The defendant contends that *Boldt v. State,* 72 Wis. 7, and *Vogel v. State,* 138 Wis. 315, stand for the proposition that the jury must unanimously agree upon a specific criminal act when the state submits evidence of multiple criminal acts in support of a single criminal charge. Both cases are distinguishable from this case.

In *Boldt,* the defendant was charged with one count of unlawfully selling liquor. At trial, the state introduced evidence showing that the defendant sold liquor without a license to a variety of different people on different days. This court reversed the conviction because of potential jury unanimity problems. The distinction between this case and *Boldt* is that the crime in *Boldt* cannot be viewed as a single, continuous criminal transaction as can a sexual assault that is committed on the same victim in a two-hour period.

In *Vogel,* five defendants were jointly charged as parties to a crime with one count of rape. The victim alleged that she was raped 22 times during a two-hour time period. The unanimity issue in *Vogel* concerned the proper application of the aiding and abetting law as it existed at that time. There was evidence introduced to the jury showing that not all of the defendants may have been present during all 22 acts. In order to find all five defendants guilty as parties to the crime, the court required the jury to agree "upon some act at which it believed all the defendants were present." *Id.* at 334. The court did not state that there had to be unanimity as to one of the several acts of sexual intercourse that took place while all of the defendants were present, only that an act of rape occurred while all were present.

The defendant also argues that this court's decision in *State v. Eisch,* 96 Wis. 2d 25, 291 N.W.2d 800 (1980),

compels the reversal of his conviction. In *Eisch,* we held that it was not multiplicitous to charge a defendant with four counts of second-degree sexual assault for four different kinds of sexual intercourse that the defendant forced the victim to perform over a two-hour period. The defendant in *Eisch* had been charged with genital intercourse, anal intercourse, fellatio and inserting a beer bottle into the victim's genitals. Each of the alleged acts of intercourse was accompanied by separate threats and distinct uses of force. The court concluded that since each act involved a "significantly different" intrusion, it was proper to charge separately.

The defendant maintains that since penis-vagina intercourse and fellatio are separate and distinct crimes which could be separately charged although arising out of one continuous sexual assault, it follows that the acts are conceptually distinct for purposes of the *Gipson-Manson* analysis. That is not necessarily true. Simply because the *Eisch* court found the different forms of penetration as a controlling factor when determining if a charge is multiplicitous, does not necessarily mean that those same acts cannot be deemed conceptually similar for purposes of jury unanimity issues.[6]

---

[6] What does follow from *Eisch* is that in the instant case, it would have been within the state's discretion to charge the defendant with six offenses. To determine whether different acts of bodily intrusion are chargeable separately, the prosecutor must carefully examine the evidence that is available. The factors to consider include the types of acts of penetration, the time intervals between penetrations, the behavior of the defendant between penetrations, changes in geographical location, and any other facts concerning the surrounding conditions under which the assault took place. *See Harrell v. State,* 88 Wis. 2d 546, 572–74, 277 N.W.2d 462 (Ct. App. 1979). The record in this case demonstrates that it would have been proper to charge the defendant for each of the sexual acts. But as discussed earlier in this opinion, since the assault could also be viewed as one continuing criminal episode, the. state did not have to charge separately.

The defendant also relies on a footnote in *Eisch* which stated: "In passing, we note our agreement with the state's ancillary argument that submission of proof of the four separate offenses in support of a single count may well deprive the defendant of the right to a unanimous jury verdict." *Id.* at 42, n. 6. That statement was dicta, since the unanimity issue was not before the *Eisch* court.

In conclusion, we hold that the sexual assault in this case can be characterized as one continuing criminal episode and properly chargeable as one offense. Under these circumstances, even though evidence of different acts was introduced at trial, the jury did not have to be unanimous as to which specific act the defendant committed in order to convict the defendant, since the acts were conceptually similar.

*By the Court.*—The decision of the court of appeals is reversed.

BEILFUSS, C.J. *(dissenting).* The majority holds that when the state presents evidence to the jury of six separately chargeable acts of first-degree sexual assault, the jury is not required to agree as to the commission of any one particular act in order to reach a unanimous verdict. Because I believe that such a holding violates the defendant's right to a unanimous verdict, I dissent. I further dissent because the analysis employed by the majority in reaching this result implicitly but effectively overrules this court's recent decisions dealing with unanimity.

A potential unanimity problem arises in this case because, although the defendant was charged with a single count of first-degree sexual assault, the state presented evidence at trial that the defendant in concert with his co-defendant forced the victim to engage in six acts of

sexual intercourse, each of which alone constitutes first-degree sexual assault. The defendant presented evidence at trial that in previous statements to the police the victim gave conflicting stories as to the number, type and location of the sexual assaults, in addition to his own testimony that none of the acts occurred. Further, the testimony of the witness from the State Crime Laboratory demonstrated that although sperm was found on the victim's clothing and the cervical and vaginal smears, the oral smears and swabs were all negative. While the guilty verdict returned by the jury unquestionably indicates that all the jurors agreed that some act of sexual intercourse occurred, based on the evidence presented the jurors may have disagreed as to which particular act or acts occurred. It is impossible, based on the general verdict, the record, and the instructions given, to détermine whether the jury agreed that any one particular act occurred.[1]

The issue is whether such possible disagreement violates the defendant's right to a unanimous verdict. I believe that it does. "Unanimity demands that the jury

---

[1] The likelihood that the jury did not agree on any particular act of sexual intercourse was magnified by the prosecutor's closing arguments in which he repeatedly told the jury that it could find the defendant guilty as long as it believed "something happened" in the car. An example is the following excerpt from his closing argument:

"Now, I think if you just look at C.G.'s testimony, you can find the defendants guilty just based on her testimony—because I think you can find that something happened in that car. You may not be able to decide exactly what sequence or exactly how many times. But right after the assault, she told the uniformed officers from Milwaukee that both men had penis to vagina sexual intercourse. She told the nurse that. She didn't tell Detective Trosch that, but when you put all of those statements together, I think you get a basic statement about what happened in that car, and even if you decide that Chet Cyrus didn't put his penis in her, that doesn't mean he didn't have another form of sexual intercourse with her."

be agreed that the defendant committed a specific act the law prohibited." *Holland v. State,* 91 Wis. 2d 134, 140, 280 N.W.2d 288 (1979). As recognized by the majority, this court in *Manson v. State,* 101 Wis. 2d 413, 304 N.W.2d 729 (1981), adopted a two-prong analysis for determining whether the defendant's right to jury unanimity was violated. First, if there is more than one crime presented to the jury, the jury is required to be unanimous as to a specific unlawful act in order to convict. *Id.* at 419. If there is only one crime, and evidence is presented as to the alternate means of committing the *actus reus* element of the crime, then jury unanimity on the particular means used is required only if such acts are conceptually distinct. *Id.* at 419, 428-30.

The majority, although stating that the evidence presented to a jury consisted of six separately chargeable offenses, *supra,* p. 597, n. 6, and that the first prong of the *Manson* analysis requires that there be jury unanimity as to each crime whenever "the jury has been presented with evidence of multiple crimes," *supra,* p. 592, holds that this first prong does not apply to this case. Instead, the majority holds that because there is only one crime charged, the six acts of sexual intercourse are merely different means of committing first-degree sexual assault and therefore unanimity is required only if the six acts are conceptually distinct. I conclude this position is untenable because it ignores not only the language of this court's decision in *Manson,* but the majority's own language in this case as quoted above. The majority ignores the evidence actually presented to the jury and holds that it is the number of crimes charged rather than the evidence presented which determines the application of the first *Manson* prong. I believe such a holding to be erroneous because it destroys the entire thrust of the first prong of the *Manson* analysis. If the majority's holding, that it is the number

of counts charged that controls over the evidence, was correct, there would have been no need in *Manson* to determine if the first prong applied, because the defendant was charged with only one count of armed robbery in *Manson*. *See also, State v. Baldwin,* 101 Wis. 2d 441, 304 N.W.2d 742 (1981).

I believe this case fits squarely within the first prong of the *Manson* analysis and thus there is no need to delve into the metaphysical realm of the conceptual distinction analysis we adopted in *Holland v. State,* 91 Wis. 2d 134, 280 N.W.2d 288 (1979). It is not the number of crimes *charged* that controls in analyzing whether there is more than one crime under the first prong of *Manson,* but the *evidence* that is presented to the jury. Here the jury was presented with evidence of six separate and distinct acts of sexual intercourse. These acts were separated not only by time but also involved two different types of sexual intercourse as defined by the legislature and committed by two different persons over a period of two hours. Under this court's decision in *State v. Eisch,* 96 Wis. 2d 25, 291 N.W.2d 800 (1980), and the court of appeals decision in *Harrell v. State,* 88 Wis. 2d 546, 277 N.W.2d 462 (Ct. App. 1979), as adopted in *Eisch,* these distinct acts of intercourse each separately constitute the crime of first-degree sexual assault. They are not merely alternate means of committing the single crime of first-degree sexual assault but are historically distinct crimes that could have been separately charged. The majority recognizes this, yet inexplicably refuses to apply the first prong of the *Manson* analysis.

Rather, the correct analysis that should be applied is that because there was evidence presented to the jury of six distinct acts, each of which constitutes first-degree sexual intercourse, jury unanimity was required as to at least one act. Thus in order to find the defendant guilty of the single offense of first-degree sexual assault,

the jury had to unanimously agree that at least one specific act occurred in order to find the defendant guilty. The jury did not have to agree that all six acts occurred because any one act alone satisfied the elements of first-degree sexual assault. This requirement that the jurors agree as to one specific act of sexual intercourse merely fulfills the very basic requirement in a criminal case that the jury unanimously agrees "as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." *United States v. Gipson,* 553 F.2d 453, 457–58 (5th Cir. 1977).

This requirement does not mean that prosecutors do not have the discretion to charge separate offenses in one count in the appropriate case. I agree with the majority that the defendant was properly charged with one offense in this case. However, the prosecutor's discretion in joining separately chargeable offenses is limited by the purpose of the rule against duplicity. One of the reasons for the rule against duplicitous charging is to protect the defendant's right to a unanimous verdict. Here, as discussed above, the presentation of evidence of multiple crimes to the jury in support of one count endangered the defendant's right to a unanimous verdict. This did not make the complaint duplicitous because this defect in the complaint can be cured by a special instruction to the jury. *United States v. Robinson,* 651 F.2d 1188, 1194 (6th Cir. 1981), cert. denied, 454 U.S. 875 (1981). This court in its earliest decisions on unanimity held that when evidence of multiple crimes is presented to the jury in support of a single count a unanimity problem is created, which can be very simply cured by instructions to the jury. *Vogel v. State,* 138

Wis. 325, 119 N.W. 190 (1909) ; *Boldt v. State,* 72 Wis. 7, 38 N.W. 177 (1888).

*Vogel* involved a situation very similar to this case. In *Vogel* five defendants were jointly charged as parties to a crime with one count of rape arising from numerous acts of sexual intercourse over a two-hour period. The defendants argued that their right to a unanimous verdict was violated because the jury could have found the defendants guilty without all the jurors agreeing that one particular act of sexual intercourse occurred. The court rejected this argument because the jurors had specifically been instructed that they had to agree that one defendant performed a particular act of sexual intercourse and that the other defendants aided and abetted in this particular act. The court stated:

"It is fair to presume that the jury took the law as the court gave it, and followed the instructions of the judge. By this particular instruction the jury was advised that, in order to convict two or more of the defendants, it should find, beyond a reasonable doubt, (1) that some one of the defendants performed an act of intercourse under such circumstances that it constituted the crime of rape; and (2) that such others as are held guilty assisted him in the performance of such act by the exercise of force and threats and such like. Clearly by this language the jury was told that all jurors must be agreed upon some particular act, or otherwise it must acquit.

". . .

"If the jury followed the direction of the court it must have agreed that some single act of intercourse was performed by some defendant under circumstances such as to make his crime that of rape, and it must have found that the other defendants aided him in the commission of that particular act. This method of procedure necessitated the jury's agreeing upon some act at which it believed all the defendants were present, and, it would seem, necessitated its agreement upon some one person as principal in the first degree." 138 Wis. at 333-34.

In *Boldt* the court reversed a conviction for selling liquor without a license where the state introduced evidence of multiple offenses in support of a single count because the trial court failed to instruct the jury that it must agree on one particular act in order to find the defendant guilty. The court discussed the unanimity problem that is created when jurors are presented with evidence of multiple criminal acts in support of a single count, stating:

"But the still more serious objection is that the jury might find him guilty under proof of several distinct offenses, when they would not agree that the evidence was sufficient to find him guilty of any one particular sale. Or, as it is well put by the court in *State v. Crimmins*, 31 Kan. 376–380, 'If evidence was introduced tending to prove twelve or more different offenses, the jury might find him guilty without any two of the jurors agreeing that he was guilty of any particular one of such offenses. One juror might believe that he was guilty of one offense, another juror of another, and so on with respect to all the jurors and all the offenses; each juror believing that the defendant was guilty of some one of the offenses which the evidence possibly tended to prove, but no two jurors agreeing that he was guilty of the same identical offense.' This, it seems to us, is a most weighty and insuperable objection to allowing evidence tending to prove several separate and distinct offenses under a complaint or information which charges the defendant with the commission of but a single one." 72 Wis. at 14–15.

The court went on to state that a special jury instruction was required in order to protect the defendant's right to unanimity in this type of situation:

"But we are clearly of the opinion that the court should have directed the jury that they must find the defendant guilty of making some one specific sale in order to convict. But the court charged in effect that if the jury was satisfied that the defendant made any sale to any one between the 10th day of May and the

11th day of June, they were authorized to convict him. For the reasons given, we think this was error, which must work a reversal of the judgment. *The jury were not instructed, as they should have been, that they must be satisfied from the proof that the defendant made a sale upon some day prior to the day specified, and that they must all agree that he was guilty of the same identical offense.* We think the court was bound to give such an instruction, in view of the evidence admitted and of the third instruction asked on the part of the defendant, which was refused." *Id.* at 16–17. (Emphasis supplied.)

The majority's attempt to distinguish these two cases is unavailing. *Boldt* and *Vogel* clearly establish that when evidence of multiple criminal acts is presented to the jury in support of a single criminal charge, a special jury instruction is required in order to protect the defendant's right to a unanimous verdict. In such a situation the general unanimity instruction is not adequate to inform the jury how it is to perform its duty. In this case the trial court should have instructed the jury that it had to unanimously agree that one of the co-edefendants committed at least one specific act of sexual intercourse and, if charged with being a party to a crime, appropriate instruction given as to aiding and abetting. Such an instruction, tailored to the particular facts and charges, must be given in all cases where the defendant is charged with a single crime but there is evidence presented to the jury that the defendant engaged in more than one act which alone would constitute the crime charged.[2] Because no such instruction was given in this case, I would affirm the court of appeal's

[2] This situation should be distinguished from cases in which the defendant is charged with a single crime, but evidence is presented of alternate means used to commit the single crime. In these situations, whether a special instruction is required depends on the application of the second prong of the *Manson* analysis. *See also, State v. Baldwin,* 101 Wis. 2d 441, 304 N.W.2d 742 (1981); *State v. Giwosky,* 109 Wis. 2d 446, 326 N.W.2d 232 (1982).

decision reversing the defendant's conviction and remand the case for a new trial.

As a final point, I feel compelled to comment on the majority's interpretation of the second prong of the *Manson* analysis. While, as discussed above, I believe the second prong of *Manson* has no application to this case which involves several, distinct crimes, rather than a single crime which can be committed in alternate ways, I am troubled by the court's application of this prong because it has the effect of implicitly overruling this court's recent unanimity decisions beginning with *Holland v. State*, 91 Wis. 2d 134, 280 N.W.2d 188 (1979), cert. denied, 445 U.S. 931 (1980).

The second prong of the *Manson* analysis requires that the jury agree on the alternate means of committing a single crime, if those means are conceptually distinct. This "conceptual distinction" analysis was first enunciated in *United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977), and was adopted by this court in *Holland*. Since *Holland* this court has consistently applied this analysis in cases where the jury was presented with alternate means of committing a single crime. *State v. Giwosky*, 109 Wis. 2d 446, 326 N.W.2d 232 (1982); *State v. Baldwin*, 101 Wis. 2d 441, 304 N.W.2d 742 (1981); *State v. Manson*, 101 Wis. 2d 413, 304 N.W.2d 799 (1981).

The majority holds that the legislature can preclude the application of this analysis by the way it defines a crime. This position is erroneous. An examination of *Gipson*, and this court's decisions applying it, clearly demonstrate that the determination of whether alternate means of committing a single crime are conceptually distinct is necessarily a judicial determination. The rationale of *Gipson* is that while the legislature defines crimes, including alternate ways of committing the same crime, it is for the courts to determine whether such

alternate means are "sufficiently analogous" to assure jury unanimity on the *actus reus* element of the offense. *Gipson*, 553 F.2d at 458.

The legislature, when it defines crimes, is concerned not with jury unanimity, but with setting out all the ways in which a particular crime may be committed. These alternate means may be extremely similar or extremely dissimilar, but nevertheless constitute the same crime. This similarity or dissimilarity, although not important in the definition stage, is extremely important in determining whether a jury has agreed that the defendant has committed the *actus reus* element of the crime charged. It is the duty of the courts in administering the guilt determination process to determine if the alternate means as defined by the legislature are conceptually similar or distinct in order to assure the constitutionally mandated unanimous verdict. The legislature simply can not foreclose the court's application of the conceptual distinction analysis. The majority's holding thus has the effect of removing the *Gipson* analysis from Wisconsin unanimity law and implicitly overruling *Holland* through *Giwosky*. I therefore dissent.

I am authorized to state that JUSTICES HEFFERNAN and ABRAHAMSON join this dissent.