NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0521n.06

Nos. 14-4192/4249

**FILED**
Jul 22, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,               )
                                        )
        Plaintiff-Appellee,             )
                                        )        ON APPEAL FROM THE
v.                                      )        UNITED STATES DISTRICT
                                        )        COURT FOR THE
BENJAMIN SUAREZ,                        )        NORTHERN DISTRICT OF
                                        )        OHIO
        Defendant-Appellant.            )
                                        )

## OPINION

**BEFORE: BOGGS, SUHRHEINRICH, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Benjamin Suarez (Suarez) appeals his conviction

of attempted witness tampering in violation of 18 U.S.C. § 1512(b)(1), asserting that the jury

instructions eliminated the required mens rea and rendered the charge duplicitous by failing to

require the jury to specify which acts he committed, thus leaving him vulnerable to reprosecution

in violation of the protection against double jeopardy. We **AFFIRM**.

## I.     The Allegations and Proceedings

The Government contends that in 2011 Suarez agreed to raise $100,000 each for

Republican congressional candidate Jim Renacci's and Republican senatorial candidate Josh

Mandel's 2012 campaigns. Suarez and Michael Giorgio (Giorgio), the CFO of Suarez's

corporation, Suarez Corporation Industries (SCI), then recruited SCI employees and their

spouses to make contributions to the candidates' campaigns in their own names, with the

promise that SCI would fully reimburse them. Giorgio collected the checks and contribution forms from the SCI contributors and sent them to the candidates' campaigns. In some instances, Giorgio completed the forms on the contributors' behalf. Suarez and Giorgio disguised the reimbursements first as additional salary and then as profit sharing. In addition, the company "grossed up" the reimbursement amount for payroll and other taxes to ensure that contributors were made whole. On March 28 and May 17, 2011, Suarez asked Mandel to write letters to public officials advocating for positions favorable to SCI. On May 29, 2011, Suarez asked the same of Renacci.

In late August of 2011, local newspapers published articles questioning the significant number of maximum contributions made by SCI employees to Renacci's and Mandel's campaigns. After the scheme became public, Suarez, Giorgio, and others at SCI attempted to disguise the reimbursements as advances on profit sharing and required the contributors to repay the reimbursements to SCI, including the amounts that had been "grossed up" to cover payroll and other taxes. The articles also prompted the FBI to begin investigating SCI, and in January of 2012, a federal grand jury in the Northern District of Ohio began looking into the alleged conspiracy.

In late July 2012, after learning that SCI's controller, Barbara Housos (Housos), planned to testify before the grand jury, Suarez sent her a handwritten letter late at night by private courier suggesting that she could write an affidavit instead. Attached to the letter was a five-page account of Suarez's "memory of what happened." Suarez asked Housos to confirm, via courier, the accuracy of his account. Suarez stated that if Housos agreed, he would turn his statement into an affidavit for her to sign. Suarez's account detailed SCI's profit sharing plan and explained that there was no conspiracy regarding the contributions. Instead, SCI's top

earners, whose income was 80% profit sharing, wanted to ensure a Republican majority in the United States House and Senate to put an end to the Democrats' "socialist policies" that "crashed the economy." However, Suarez's account contained details that Housos later testified were false or beyond her knowledge. Suarez's letter concluded:

> Do not tell anyone about his. Also, the new attorneys said no one should admit to wrongdoing even with a letter of immunity. That's a lie. They will still prosecute you as a co-conspirator. Also, do not admit to anything you think might be wrongdoing to the attorneys. They could turn you in. Your testimony is key to keeping Mike G[iorgio] from getting indicted which could take down SCI. Do not call me on this as our lines may be tapped.

Housos sought formal immunity, delaying her testimony until November of 2012. After Housos testified before the grand jury, Suarez attempted to undermine her testimony by falsely accusing her at SCI's annual meeting of having confided to him in the past that she suffered from memory lapses. Further, in January 2013, Suarez drafted a letter and demanded that human-resource director Julianne Dalayanis sign and hand deliver it to all 500 SCI employees. The letter accused the United States Attorney of engaging in malicious prosecution and asserted that the prosecutors aggressively investigated SCI donors suffering from personal crises. Suarez used Housos as an example, detailing her struggle with colon cancer and the suicide of her son. Prior to distribution of the letter, Housos "begged" Suarez not to include her personal information because although her name was not mentioned, she would be easily identified by her coworkers.

On September 24, 2013, the grand jury returned the original indictment charging Giorgio, Suarez, and SCI with campaign-finance violations and other related charges. On October 22, 2013, the grand jury returned a superseding indictment charging Suarez with: conspiracy to violate campaign-finance laws in violation of 18 U.S.C. § 371 (Count 1); violation of campaign-finance laws by contributing in the name of another (Count 2); violation of campaign-finance laws by making corporate contributions (Count 3); causing false statements (Counts 4–6);

conspiracy to obstruct justice (Count 7); witness tampering (Count 8); and obstruction of justice

(Counts 9–10). SCI was charged with all counts except Count 8, and Giorgio was charged with

all counts except Counts 8 and 10. Count 8 alleged that Suarez

> did knowingly attempt to use intimidation, threaten, and corruptly persuade another person and engage in misleading conduct toward another person who worked at SCI, whose initials are B.H., by a) writing and having delivered to B.H. at B.H.'s home a one-page note in Suarez's handwriting with an attached five-page typewritten document relating to and providing direction regarding B.H.'s upcoming testimony before a federal grand jury, telling her not to communicate with her own lawyer, and containing an inaccurate version of events that Suarez wished her to present; b) writing and circulating an inaccurate letter to the employees of SCI opining that B.H.'s mental abilities had been compromised, referencing medical issues experienced by B.H., alleging that B.H. had suffered a tragic loss as a result of the investigation; and c) making statements opining that B.H.'s mental abilities had been compromised, all with the intent to influence, delay, and prevent the testimony of B.H. in an official proceeding . . . .

Giorgio pleaded guilty to counts 1–7 and Suarez and SCI proceeded to trial. At the close

of the Government's case, the district court granted motions for acquittal as to Suarez on Counts

9 and 10 (the obstruction counts) and SCI on Count 9.

During deliberations, the jury asked the district court regarding the acts charged in Count

8: "In order to find as it pertains to [Count 8], does the burden have to be met on [a], [b], and [c],

or any one [of the three acts alleged in the superseding indictment]?"[1] The court and the parties

discussed a response over the phone, without a court reporter present, and then later agreed to an

account of the discussion. Suarez initially objected, but eventually agreed that the answer should

be "any one act." However, Suarez argued that the court should add "unanimously beyond a

reasonable doubt." The court provided the jury with the following answer: "any one beyond a

reasonable doubt." Suarez later filed a written motion requesting that the jury be further

instructed that: "You must be unanimous as to which one of the alleged acts identified in (a),

---

[1] See the text of Count 8, quoted above.

(b), and (c) satisfies this element beyond a reasonable doubt. If you are not unanimous on this point, you must acquit Mr. Suarez on Count 8." The government filed a motion in opposition the next day, but the jury returned its verdict shortly thereafter without further instruction.

The jury found Suarez and SCI not guilty on counts 1–7; SCI not guilty on Count 10; and Suarez guilty only on Count 8 (witness tampering). After the verdict was read, the court polled each juror. Suarez then requested a second poll "as to which of the three acts [charged in Count 8] . . . that they found on. If they, in fact, they found unanimity as to one of those three, we think we need to preserve that for appeal." The Government objected, and after discussion Suarez eventually expressed agreement with the district court's language: "as to defendant Benjamin Suarez and as to Count 8, did you unanimously agree on at least one of the three acts?" Each juror answered in the affirmative.

Suarez filed a motion for acquittal or a new trial on Count 8, arguing that the verdict was duplicitous and therefore violated double jeopardy, that the government's burden was reduced when the jury was permitted to find him guilty based on only one charged act rather than all three, and that the attempt instruction omitted the necessary element of intent. Finding that the claims were not properly raised during the course of the litigation, the district court reviewed them for plain error and denied the motion. The district court sentenced Suarez to 15 months' imprisonment and denied his motion for reconsideration.

## II.    Count 8 Jury Instructions

Suarez first argues that the jury instructions on attempted witness tampering require reversal because they eliminated the intent element of the offense. The Government responds that the jury instructions provide an accurate statement of the applicable law, and that because Suarez failed to preserve his objection to the instructions, plain-error review applies. The district

court reviewed Suarez's post-trial objection to the instructions for plain error, holding that Suarez did not properly object during trial. Suarez disagrees, asserting he is entitled to de novo review because he timely informed the district court in a joint trial brief of his specific objection to the instruction and of the grounds of the objection. Rather than engage in a lengthy discussion of the preservation issue, we will assume arguendo that Suarez preserved his objection and review his claim of instructional error accordingly.[2]

The Supreme Court has emphasized that jury instructions are to be considered as a whole. "Our decisions repeatedly have cautioned that instructions must be evaluated not in isolation but in the context of the entire charge." *Jones v. United States*, 527 U.S. 373, 391 (1999).

The district court instructed the jury:

> Defendant Benjamin Suarez is charged in Count 8 with knowingly intimidating or attempting to intimidate a witness, in violation of Title 18, United States Code, Section 1512(b)(1).
>     Section 1512(b)(1) . . . provides in part that: "Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to influence, delay, or prevent the testimony of any person in an official proceeding" shall be guilty of an offense against the United States.

> For you to find the defendant Benjamin Suarez guilty of the crime of witness tampering charged in Count 8 of the superseding indictment, the government must prove each of the following two elements beyond a reasonable doubt.

> First, that on or about the date charged, Benjamin Suarez knowingly intimidated, threatened, corruptly persuaded, or engaged in misleading conduct toward the person identified in the superseding indictment as a witness, or attempted to do so.

> And, second, that Benjamin Suarez did so intending to influence, delay, or prevent the testimony of that person in an official proceeding.

---

[2] Because we treat this claim of error as preserved for purposes of our review, we do not address Suarez's claim of error regarding the district court's striking the attorney declarations regarding in-chambers conferences.

An act is done knowingly if it is done voluntarily and purposely, and not by accident or mistake.

The term "Intimidation" as used in these instructions means the use of any words or any actions that would harass, frighten or threaten a reasonable, ordinary person to do something that person would not otherwise do, or not to do something that the person otherwise would do.

To corruptly persuade means to act knowingly with a wrongful, immoral or evil purpose to convince or induce another person to engage in certain conduct.

As I indicated, the first element may be satisfied if Benjamin Suarez actually used intimidation, threats, corrupt persuasion, or engaged in misleading conduct, or if he attempted to do so. A defendant may be found to have attempted to intimidate, threaten, corruptly persuade, or engage in misleading conduct if his conduct constituted a substantial step towards committing the crime. The act which constitutes a substantial step must corroborate the defendant's criminal purpose.

The government is not required to prove that an official proceeding was ongoing, or even about to be instituted, at the time of the offense. The law requires only that the proceeding was foreseen by the defendant such that the defendant knew that his actions were likely to affect the proceeding.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

The phrase "With intent to influence, delay, or prevent testimony" means to act for the purpose of causing any person to change her testimony or information in any way or to withhold testimony or information, permanently or only for a period of time.

Suarez argues that the instruction is improper because it completely eliminates the intent element of the attempt offense. Specifically, he argues, the instruction does not make clear that intent to commit witness tampering is a requisite element of the crime. We disagree.

Attempted witness tampering in violation of 18 U.S.C. § 1512(b)(1) has two elements: the defendant 1) "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person," and 2) does so "with intent to influence, delay, or prevent the testimony of any person in an official proceeding." Suarez argues that the instruction given by the court, which read: "A defendant may be found to have attempted to intimidate, threaten, corruptly persuade, or engage in

misleading conduct if his conduct constituted a substantial step towards committing the crime," allowed the jury to return a guilty verdict based solely on his conduct without regard to his intent.

There is no dispute that intent is an essential element of attempt. "The two requisite elements of an attempt are (1) an intent to engage in criminal conduct and (2) the performance of one or more overt acts which constitute a substantial step towards the commission of the substantive offense." *United States v. Williams*, 704 F.2d 315, 321 (6th Cir. 1983). However, the instruction read as a whole does contain an intent requirement. Tracking the language of Section 1512(b), the district court required the jury to find that Suarez "knowingly intimidated, threatened, corruptly persuaded, or engaged in misleading conduct toward witness Barbara Housos, or attempted to do so." The court instructed the jury that "an act is done knowingly if it is done voluntarily and purposely, and not by accident or mistake." The court further instructed regarding the intent element that the jury had to find "that Benjamin Suarez did so intending to influence, delay, or prevent the testimony of that person in an official proceeding." The court then went on to address the concept of attempt and connect it with the instructions already given regarding the elements of the offense:

> As I indicated, the first element may be satisfied if Benjamin Suarez actually used intimidation, threats, corrupt persuasion, or engaged in misleading conduct, or if he attempted to do so. A defendant may be found to have attempted to intimidate, threaten, corruptly persuade, or engage in misleading conduct if his conduct constituted a substantial step towards committing the crime. The act which constitutes a substantial step must corroborate the defendant's criminal purpose.

Suarez argues that "Knowledge that a crime will occur and intent to commit a crime are different levels of culpability," and that the instruction does not adequately convey the specific intent required. "[A]ttempt crimes require proof of a specific intent to complete the acts constituting the substantive offense. The intent to finish the crime, coupled with affirmative acts

toward that end, is a *sine qua non* of a punishable attempt." *United States v. Calloway*, 116 F.3d 1129, 1135–36 (6th Cir. 1997). This is true. However, taken in their entirety, the instructions told the jury both that Suarez had to have acted knowingly and that he had to have had the intent to affect the testimony, and nothing in the attempt portion of the instruction negated these requirements.

Suarez also takes issue with the instruction that "the substantial step must corroborate the defendant's criminal purpose" portion of the instruction: "the substantial step analysis entails an objective inquiry that *assumes* that the requisite intent exists." This argument too is unsupported by the instructions as a whole. The attempt portion of the instructions first describes what kind of act must be found in order to convict for attempted witness tampering: one that is a substantial step toward committing the crime. It then requires that the substantial step corroborate the defendant's criminal purpose. However, the jury was already instructed that the purpose had to have been to influence, delay, or prevent the testimony of Housos. Read as a whole, the instructions make clear that in addition to finding that Suarez took a substantial step toward committing the offense, the jury also had to find that he "did so intending to influence, delay, or prevent the testimony of that person in an official proceeding." Further, after the attempt portion of the instruction, the district court explained:

> The phrase "With intent to influence, delay, or prevent testimony" means to act for the purpose of causing any person to change her testimony or information in any way or to withhold testimony or information, permanently or only for a period of time.

In sum, viewing the instructions as a whole, we find no error.

## III.   Count 8 Verdict

Suarez next argues that the district court rendered Count 8 duplicitous when it instructed the jury that it need only find that he committed one of the three acts charged in the indictment to

return a guilty verdict. He maintains that this error could have been fixed had the district court allowed him to poll the jurors regarding which act or acts each juror found he committed. Suarez further contends that the guilty verdict violates his protections against double jeopardy by exposing him to a potential second prosecution for one or more of the same acts.

The parties again dispute the applicable standard of review. The district court applied plain-error review: "Here, defendants filed numerous pretrial motions, which included a motion directed at duplicity. In that motion, defendant expressly identified double jeopardy concerns associated with other counts in the indictment. Nowhere in that motion does defendant challenge that Count Eight is duplicitous or that defendant's double jeopardy rights are implicated." Moreover, the court noted that defendants made no objection to the jury instructions on this ground during trial. "Immediately after the jury charge and before the jury retired for deliberations, the Court specifically inquired at sidebar as to whether any party objected to the instructions. Twice counsel for defendant indicated that there were 'no objections' to the jury instructions." The district court also noted that Suarez's counsel ultimately agreed both to the answer given to the jury's question regarding the acts in the indictment and to the language of the jury poll. Therefore, we review this claim for plain error.

Suarez maintains that the because the jury returned a general verdict of guilty on Count 8, without specifying on which of the alleged acts the conviction was based, he is subject to being prosecuted again for any of the acts and the verdict therefore violates the protection against double jeopardy.[3] The Government responds that it may constitutionally charge multiple means

---

[3] Suarez does not claim on appeal that the duplicitous charge deprived him of a unanimous verdict, although this is generally the "primary concern" regarding duplicity. *United States v. Kakos*, 483 F.3d 441, 443 (6th Cir. 2007).

of commission of a single offense in one count and that Suarez's challenge regarding double jeopardy is speculative and thus not ripe for review.

"Separate offenses must be charged in separate counts of an indictment." Fed. R. Crim. P. 8(a). "An indictment is duplicitous if it sets forth separate and distinct crimes in one count." *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002). This court has stated that "[t]he overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or on both." *United States. v. Washington*, 127 F.3d 510, 513 (6th Cir. 1997). "The test announced most often in the cases is that offenses are separate if each requires proof of an additional fact that the other does not." *Davis*, 306 F.3d at 416.

However, Federal Rule of Criminal Procedure 7(c)(1) provides that "[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means." The Supreme Court explained:

> We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.

*Schad v. Arizona*, 501 U.S. 624, 631–32 (1991). Thus,

> the indictment on such a statute may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction *and* where the statute has 'or,' and it will not be double, and it will be established at the trial by proof of any one of them.

*Griffin v. United States*, 502 U.S. 46, 51 (1991) (quoting 1 J. Bishop, New Criminal Procedure § 436, pp. 355–356 (2d ed. 1913)) (collecting cases). Here, rather than describe three separate crimes, Count 8 alleged three means of committing the same offense, which this court permits.

-11-

>The determination of whether a group of acts represents a single, continuing scheme or a set of separate and distinct offenses is a difficult one that must be left at least initially to the discretion of the prosecution. This discretion, however, is not without limits. Ultimately, the indictment must be measured in terms of whether it exposes the defendant to any of the inherent dangers of a duplicitous indictment. Those dangers include the possibility that the defendant may not be properly notified of the charges against him, that he may be subjected to double jeopardy, that he may be prejudiced by evidentiary rulings during the trial, and that he may be convicted by a less than unanimous verdict. If any of these dangers are present, the acts of the defendant should be separated into different counts even though they may represent a single, continuing scheme.

*United States v. Alsobrook*, 620 F.2d 139, 142 (6th Cir. 1980) (internal citations omitted). *Alsobrook* found that an indictment charging defendant with one count of violating the Travel Act based on six separate trips was not duplicitous.

Here, Count 8 similarly describes an ongoing attempt to tamper with Housos's testimony, not individual crimes that must be separately charged. Thus, the indictment is not duplicitous. Further, the district court required unanimity in its instruction, and when polled, the jurors affirmed that they unanimously found at least one of the acts charged in the indictment.

Lastly, as pertinent here, the Fifth Amendment guarantee against double jeopardy "is a guarantee against being twice put to trial for the same offense." *Abney v. United States*, 431 U.S. 651, 661 (1977). The Government argues that Suarez's claim of double jeopardy is, at this point, only hypothetical and thus not ripe for review. "Here, jeopardy has only attached once. There is no later indictment, much less an empaneled and sworn jury, on any second prosecution, let alone one for the same offense. The only basis for Suarez's Double Jeopardy claim is pure speculation about what might occur in the future." We agree. There has been no second indictment, nor any indication that further charges are contemplated, and it is difficult to understand why Suarez speculates that he will again be charged with an offense for which he was already tried. Thus, we find no error regarding the Count 8 verdict, plain or otherwise.

For the foregoing reasons, we **AFFIRM**.