RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0238p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 14-4193

MICHAEL GIORGIO,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:13-cr-00420—Patricia A. Gaughan, District Judge.

Decided and Filed:  September 25, 2015

Before:  BOGGS, SUTTON, and COOK, Circuit Judges.

———————————

## COUNSEL

———————————

**ON BRIEF:**  Drew Findling, THE FINDLING LAW FIRM, Atlanta, Georgia, Brian H. Bieber, GRAY ROBINSON, P.A., Miami, Florida, for Appellant.  Carole S. Rendon, Rebecca Lutzko, Matthew Cronin, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

———————————

## OPINION

———————————

SUTTON, Circuit Judge.  Michael Giorgio admitted to soliciting money from "straw campaign donors" in violation of federal campaign-finance laws and signed a plea agreement to that effect.  After a jury acquitted his co-conspirators on similar charges, he had second thoughts, trying twice to withdraw his plea.  The district court declined each time.  Finding no abuse of discretion, we affirm.

I.

At the relevant time, federal campaign-finance law banned all corporate donations to candidates, 2 U.S.C. § 441b (2006), and it banned individual donations of more than $5,000 per candidate in an election cycle, *see id.* § 441a; 76 Fed. Reg. 8368, 8370 (Feb. 14, 2011). To prevent people from using "straw donors" to bypass those laws, federal law also bans people from "mak[ing] a contribution in the name of another person." 52 U.S.C. § 30122 (formerly 2 U.S.C. § 441f).

Giorgio served as the Chief Financial Officer of Suarez Corporation Industries, a direct-marketing company that sells a variety of household products to consumers. His boss, the company's owner Benjamin Suarez, asked him to help make a total of $200,000 in illegal corporate donations to two candidates for federal office. Giorgio agreed. The two asked Suarez Corporation employees to donate $5,000 each to the candidates, with a promise that the company would reimburse any donation. As the money came in, Giorgio submitted the employees' donations and paperwork to the candidates. He then reimbursed the employees using company payroll checks grossed up for taxes so that it looked like the company had merely paid a little extra to its employees. The upshot was that Giorgio and Suarez made thousands of dollars of corporate donations in the names of other people.

The plan did not succeed. A newspaper article questioned the legality of the donations, and eventually so did the United States. A grand jury indicted Giorgio, Suarez, and the company in 2013 for violating campaign-finance laws.

The defendants obtained separate counsel. Giorgio used attorneys from the law firm Walter Haverfield, while Suarez and the company each used other law firms. Consistent with a joint defense agreement, the company paid for the representation of all three defendants. Due to that fee arrangement, Giorgio's attorneys should have obtained his informed consent to allow the company to pay on his behalf. *See* Ohio R. Prof. Conduct 1.8(f). They did not. But they did make clear to the company that they would "be serving as [Giorgio's] counsel and not as counsel for [the company]." R. 310-3 at 3.

As the firms formed defenses for their clients, Walter Haverfield explored the possibility of having Giorgio take a plea. He initially refused. But two weeks before trial, after eight months of "soul searching," Giorgio had a change of heart and pleaded guilty. No. 14-4192, R. 299 at 193. Giorgio figured that if he "own[ed] up to what [he] did," waived most of his right to appeal, and testified against his codefendants, he would receive a reduced sentence. *Id.* at 191. The government figured it could use Giorgio's testimony to secure the convictions of the company and Suarez.

Neither side of the deal benefitted from it as planned. The jury acquitted Suarez and the company of the campaign-finance violations, though it did convict Suarez on a misdemeanor charge of attempted witness tampering. *United States v. Suarez*, Nos. 14-4192, 14-4249, 2015 WL 4478112 (6th Cir. July 22, 2015). Giorgio did not receive the government's support for a reduced sentence because the United States thought he did not testify consistent with his proffer at the time of the plea.

After watching the jury acquit his co-conspirators on the campaign-finance charges, Giorgio had second thoughts about his guilty plea. Over the next four months, he fired Walter Haverfield, hired new attorneys, and moved to withdraw the plea. He contended that the firm had a conflict of interest with the company because the company paid the firm's legal fees. The district court disagreed, finding no conflict of interest. Giorgio tried to withdraw his plea again at sentencing, this time claiming the government breached the plea agreement by not requesting a reduced sentence. The district court again disagreed, reasoning that the plea agreement gave the government discretion on whether to ask for a lower sentence. The court did, however, vary downward four levels on its own initiative: two due to Giorgio's acceptance of responsibility and two due to Giorgio's assistance, "extraordinar[il]y good character," and "dutiful obedience." R. 369 at 13, 56–57. It sentenced him at the bottom of the (much-lowered) guideline range—to 27 months in prison.

On appeal, Giorgio challenges the district court's refusal to allow him to withdraw his guilty plea.

II.

A defendant may withdraw his plea if he presents the district court with a "fair and just" reason for doing so. Fed. R. Crim. P. 11(d)(2)(B). We review a district court's decision to deny a plea withdrawal for abuse of discretion. *United States v. Quinlan*, 473 F.3d 273, 276 (6th Cir. 2007).

A.

*First Motion.* The district court did not abuse its discretion in concluding that Giorgio's first motion did not present a "fair and just" reason for withdrawal. It carefully considered the seven relevant guideposts in this context, *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), six of which Giorgio barely contests and all of which cut against him.

1. A substantial amount of time—118 days—elapsed between Giorgio's plea entry and his plea withdrawal. We have held that far less time, 75 days for example, is "alone" enough to uphold the district court's denial of a motion to withdraw a guilty plea. *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004); *see also, e.g.*, *United States v. Durham*, 178 F.3d 796, 798–99 (6th Cir. 1999) (77 days).

2. Giorgio did not suddenly decide to proclaim his innocence. He freely admitted his guilt throughout—before, during, and after trial. To this day, indeed, he has yet to disclaim his guilt.

3. The circumstances surrounding Giorgio's plea suggest that it should not be withdrawn. Giorgio acknowledged the factual basis of his guilt in the plea agreement and did not challenge his guilt at the Rule 11 plea hearing. He stood by that view during trial. *See Quinlan*, 473 F.3d at 278. And it was only after his co-conspirators were acquitted that he changed his mind—and even then only changed his mind about the plea agreement, not about his guilt or innocence. This factor strongly supports the government.

4. Giorgio is a sophisticated and well-educated businessman, not someone apt to misunderstand what he was signing.

5. Although Giorgio did not have prior experience with the criminal-justice system, his background, time spent "soul searching," No. 14-4192, R. 299 at 193, and comments about the plea suggest that he understood what he was doing. *Quinlan*, 473 F.3d at 278.

6. The government would be prejudiced if Giorgio's plea is withdrawn. It has already spent considerable time prosecuting the three co-conspirators—and at this point it cannot retry two of them. The third one (Giorgio) admitted his guilt (based on the existing Rule 11 colloquy and trial testimony) and in his appellate briefs does not deny the truthfulness of those statements. All of this would be for naught (at least in the short term) if we permit the plea withdrawal.

7. The remaining factor requires more elaboration, but it still points in the same direction. At issue is whether the defendant has offered a legitimate ground for the plea withdrawal. Giorgio contends that Walter Haverfield had a "conflict of interest" because it was paid by the company and that the conflict led to an involuntary plea. It is true that such fee arrangements "inherently" raise a potential conflict of interest. *Moss v. United States*, 323 F.3d 445, 462 (6th Cir. 2003); *see Wood v. Georgia*, 450 U.S. 261, 268–70 (1981). But a potential conflict remains just that until it *actually* impairs the defendant's interests. *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). This one did not.

Walter Haverfield represented *Giorgio's* interests—not the company's—as it made clear it would from the outset. In its retention letter with Giorgio, signed by the company, the firm said it would "be serving as [Giorgio's] counsel and not as counsel for [the company]." R. 310-3 at 3. Consistent with this commitment, the firm sought a plea deal early on and remained "fully prepared to mount a vigorous defense at trial" if Giorgio opted to take that route. R. 310-6 at 7. It gave Giorgio competent advice, both practically (*e.g.*, for Giorgio to "distance[]" himself from the company, R. 323-1 at 3) and legally (*e.g.*, the pros and cons of pleading versus trial). And it followed Giorgio's instructions to take the plea, even though doing so meant its client would testify *against* the party that paid it. Nothing about Walter Haverfield's representation impaired Giorgio's interests.

Giorgio counters by saying that another attorney might have raised the defense that he was just following the company's orders and did not know his actions were illegal. But no conflict prevented Giorgio from pursuing that defense. That is indeed the argument the company

made at trial, which makes its interests *aligned* with Giorgio's, not "antagonistic," "conflicting," or "inconsistent." *See* Appellant's Br. 28. This proposed defense at any rate would not have changed Giorgio's fate. Courts do not lightly accept "ignorance of the law" and "just following orders" defenses—whether courts of yesterday, *see Barlow v. United States*, 32 U.S. (7 Pet.) 404, 410–12 (1833) (Story, J.), or courts of today, *see Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010). And such a defense at any rate does not justify what Giorgio admitted at trial to doing outside of the context of the plea: "knowingly committing the crime." R. 324-2 at 1; *see* No. 14-4192, R. 299 at 193–94.

Giorgio, moreover, cannot "show that there is a reasonable probability that . . . he would not have pleaded guilty" even if he could show conflicted counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Giorgio insisted on sticking to his plea even after an attorney from Walter Haverfield asked—*after trial*—if he wanted to withdraw it. "I do not want to withdraw my guilty plea," Giorgio reiterated. "I am guilty as I have indicated in my plea agreement." R. 324-2 at 1. Giorgio thus cannot show that any potential conflict affected his decision to take the plea. *See Quinlan*, 473 F.3d at 277. The decision was his alone. It had nothing to do with any conflict of interest and all to do with his admitted guilt.

With the seven factors lining up against him and without anything else that supports him, the district court did not commit "a clear error of judgment" in denying Giorgio's first motion to withdraw. *United States v. Frost*, 914 F.2d 756, 764 (6th Cir. 1990).

Giorgio insists that no court could come to this conclusion without first holding a formal "conflict hearing." Appellant's Br. 14–23. He asks us to remand the case, contending that *United States v. Krebs*, 788 F.2d 1166 (6th Cir. 1986), requires a hearing "for all situations involving a potential conflict of interest." Appellant's Br. 19 n.8. But that is not what *Krebs* (or any other case) holds. In dicta, *Krebs* noted that "when a trial court becomes aware of a potential conflict of interest," it must "pursue the matter." 788 F.2d at 1172. But it did not specify *how* courts should pursue the matter, *see id.*, and the Supreme Court has not required a formal hearing even in the face of a potential conflict like this, *see Mickens*, 535 U.S. at 173–74. Courts need not conduct formal conflict hearings so long as they can fairly make their determinations from the record and briefs. *United States v. Martin*, 668 F.3d 787, 795–97 (6th Cir. 2012); *see Wood*,

450 U.S. at 272. For the reasons just discussed, the district court could—and did—make a fair determination regarding Giorgio's first motion.

*United States v. Osborne*, 402 F.3d 626 (6th Cir. 2005), says nothing to the contrary. Yes, the decision remanded the conflict issue for a formal hearing. But that's because the case involved *joint* representation, and Criminal Rule 44(c) *requires* an "inquiry" in that setting. *Id.* at 631–33. This case does not involve joint representation, meaning that Rule 44(c) and *Osborne* do not apply. *United States v. Terry*, Nos. 13-2297, 13-2385, 13-2405, 2015 WL 3505480, at *2 (6th Cir. June 4, 2015) (distinguishing *Osborne* on these grounds); *see Mickens*, 535 U.S. at 175–76. One other difference between *Osborne* and this case exists. There, the record was "simply too sparse" to make a conflict determination without a hearing. 402 F.3d at 633. Here, the record is not. The district court did not abuse its discretion in denying Giorgio's first motion without a formal hearing.

## B.

*Second Motion.* Giorgio separately argues that he should be able to withdraw his plea because the government broke its promise to move for a "substantial assistance" sentence reduction under Sentencing Guideline § 5K1.1. *See Santobello v. New York*, 404 U.S. 257, 262–63 (1971). But the government made no such promise. Just read the plea agreement. "If the [government] determines that [Giorgio] has fully cooperated and rendered substantial assistance," it says, the government "may" move for a substantial-assistance reduction. R. 170 at 8. The word *may* gave the government discretion. *See Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 346 (2005). Armed with that discretion, the government can choose not to ask for a reduced sentence so long as it doesn't have unconstitutional motives. *Wade v. United States*, 504 U.S. 181, 185–86 (1992); *see United States v. Moore*, 225 F.3d 637, 641 (6th Cir. 2000). It didn't here.

The government gave two reasons for not moving for a reduction, neither unconstitutional. The first was that Giorgio "repeatedly made statements that were detrimental to the government's case." R. 369 at 18. That may be a bit overstated, but this much is true. Giorgio gave equivocal testimony, backpedaling on cross-examination by testifying that what he (and thus the company) did was "[n]ot a crime but a mistake." No. 14-4192, R. 307 at 182. The

defendants' lawyers pounced on that about-face, using it as a theme in their closing arguments and likely contributing to their clients' acquittals.  Because this kind of testimony shows a *lack of* "substantial assistance," we have found it sufficient to support the government's decision not to move for a reduction.  *See, e.g.*, *United States v. Head*, 927 F.2d 1361, 1375–76 (6th Cir. 1991).

Giorgio takes issue with the government's second reason:  that his motion to withdraw was "certainly inconsistent with substantially assisting the government."  R. 369 at 18–19.  He contends that this remark shows that the government punished him for exercising his constitutional right to conflict-free counsel.  *See Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).  But the government punishes someone in this context only if it acts "solely" because of "the defendant's exercise of a protected legal right."  *United States v. Goodwin*, 457 U.S. 368, 380 n.11 (1982).    The record, including Giorgio's equivocal testimony, shows that the government acted not to punish Giorgio but instead on its legitimate belief that Giorgio did not render *substantial* assistance.  The district court did not abuse its discretion in so concluding.

For these reasons, we affirm.