NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0541n.06

No. 18-5078

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 26, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| MARION LEAVES BROWN, III, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: **BATCHELDER, GIBBONS, and ROGERS, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge**. Marion Brown III pleaded guilty, as part of a plea agreement, to distributing fentanyl resulting in serious bodily injury and to being a felon in possession of a firearm. Months later Brown moved to withdraw his guilty plea. Finding that Brown did not have a "fair and just" reason for doing so, the district court denied his motion. We **AFFIRM**.

**I.**

On March 29, 2017, a woman in Lexington, Kentucky, overdosed on drugs. First responders with the Lexington Fire Department revived her by applying two doses of Naloxone, a drug that reverses the potentially lethal depression of the central nervous system and respiratory system caused by opioids.[1] Laboratory tests revealed that the drug that caused her overdose consisted of both heroin and fentanyl. The overdose victim told police originally that another

---

[1] Naloxone is sold under the trade name "Narcan." *See* Definition of Naloxone, Wikipedia, https://en.wikipedia.org/wiki/Naloxone (last visited Aug. 30, 2018).

woman sold her the drugs, but several days later the victim admitted that she had lied and told police that Marion Brown III ("Brown") was her source. With the victim's cooperation, police recorded subsequent conversations she had with Brown setting up another drug purchase. While Brown "cautioned her about overdosing," he nonetheless sold her fentanyl.

Police executed a search warrant at Brown's apartment. During an interview with police, Brown admitted that he had been selling narcotics. He did not admit, however, that he sold the drugs that caused the woman's overdose. Brown also indicated that he was willing to assist with police investigations to get a more lenient sentence.

On May 11, 2017, the grand jury charged Brown with four criminal counts:

> (1) conspiracy to distribute controlled substances containing a detectable amount of fentanyl, heroin, and/or 6-monoacetylmorphine, in violation of 21 U.S.C. § 841 and 21 U.S.C. § 846;

> (2) distribution of a mixture or substance containing a detectable amount of fentanyl, the use of which results in serious bodily injury, in violation of 21 U.S.C. § 841(a)(1);

> (3) distribution of a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1); and

> (4) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

After retaining counsel, Brown negotiated a Plea Agreement in which he pleaded guilty to the second and fourth counts. The Plea Agreement states that Brown "knowingly and intentionally distributed a mixture or substance containing a detectable amount of fentanyl . . . [and that] the use of the controlled substance distributed by [Brown] resulted in serious bodily injury to an individual." The factual basis for the offenses laid out in the Plea Agreement states that the female overdose victim identified Brown as the source of her drugs.[2] In exchange for his guilty plea, prosecutors agreed that the United States would move at sentencing for a reduction of three points

---

[2] The Plea Agreement fact section is not entirely accurate on this point. It suggests that the overdose victim, while in the hospital recovering from the overdose, identified Brown as the source of her drugs. In fact, it was only several days later at a follow-up interview that the overdose victim identified Brown as her source.

in his total advisory offense level (45) to reflect his willingness to accept responsibility for his criminal conduct. That agreement was contingent on Brown's not committing another crime, obstructing justice, or violating a court order.

At Brown's Rearraignment Hearing on July 28, 2017, before accepting his guilty plea, the district court asked Brown: "Have you ever been treated or hospitalized for any type of a mental illness or a mental condition?" Brown answered, "No, sir." Brown said that he understood the terms of the Plea Agreement and that no one had coerced him to plead guilty. Brown admitted that he supplied the overdose victim with drugs containing fentanyl and that the fentanyl-laced drugs he distributed to her resulted in the serious bodily injury she suffered.

On September 2, 2017, before Brown was sentenced, he unsuccessfully attempted to escape from jail. On November 16, one day before Brown's sentencing hearing, his retained counsel informed the court that Brown wished to withdraw his guilty plea. Brown's retained counsel understood that, as a consequence of his attempted escape, Brown no longer qualified for the three point "acceptance of responsibility" reduction. Though Brown's retained counsel advised him against doing so, Brown insisted on moving to withdraw his plea. His counsel notified the court of Brown's wishes and also moved to withdraw from the case. The court granted counsel's motion to withdraw.

With new appointed counsel, Brown moved to withdraw his guilty plea at the rescheduled sentencing hearing on December 29, 2017. The district court denied his motion, finding, after considering the record under the relevant factors, that Brown had not made the requisite showing for withdrawing a guilty plea: a fair and just reason for doing so. The district court sentenced Brown to 480 months imprisonment. Brown appealed, challenging only the denial of his motion to withdraw his guilty plea.

**II.**

We review for abuse of discretion the district court's denial of Brown's motion to withdraw his guilty plea. *See United States v. Giorgio*, 802 F.3d 845, 848 (6th Cir. 2015). "A defendant may withdraw his plea if he presents the district court with a 'fair and just' reason for doing so." *Id*. (quoting Fed. R. Crim. P. 11(d)(2)(B)). Brown bears the burden of proving that his motion should be granted. *See United States v. Goddard*, 638 F.3d 490, 494 (6th Cir. 2011). A fair and just reason does not include a tactical decision made by a defendant to "enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *Id*. at 493-94 (citation omitted).

Seven non-exclusive factors guide a district court's inquiry into whether a defendant has a "fair and just" reason for withdrawing his plea:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds by statute as stated in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000).

*Time elapsed*. The district court found that a significant amount of time separated Brown's guilty plea from his motion to withdraw that plea. While 154 days ultimately separated Brown's guilty plea and his motion to withdraw that plea, Brown's retained counsel first informed the court of his desire to withdraw his motion the day before the November 17, 2017, hearing, over 100 days after entering the guilty plea. Moreover, Brown maintains that he told his retained counsel that he wanted to withdraw his guilty plea well before the November 17, 2017, hearing, but that his counsel tried to dissuade him. The district court correctly held that even the most generous

interpretation—that only 76 days elapsed between Brown's guilty plea and when he first informed his counsel of his desire to withdraw the plea—is still a substantial delay. *See United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) (holding that the "strongest factor supporting the district court's denial" of the defendant's motion to withdraw his plea was the 77-day delay).

Brown argues that a 76-day delay "does not automatically foreclose a motion to withdraw." The district court did not hold otherwise. Brown also turns for support to *United States v. Osborne*, 565 F. Supp. 2d 927 (E.D. Tenn. 2008), a case where a district court granted a motion to withdraw a plea despite a 133-day delay. There, however, the district court had evidence that the defendant first attempted to withdraw his guilty plea only two weeks after he had entered his plea. *Id*. at 933-34. The district court here was justified in concluding that Brown's delay was substantial.

*Reason for delay*. Brown argues that his delay in moving to withdraw his plea was caused by his "inability to communicate effectively with his retained defense counsel." Brown claims that, in spite of his innocence, his retained counsel strongly advised him to enter the Plea Agreement and then later strongly advised him not to withdraw his guilty plea. Brown also claims that he was geographically distant from his counsel and suffered from emotional issues during the period that elapsed between his guilty plea and the moment he informed the court of his desire to withdraw that plea.

Brown's explanations for his delay are not persuasive. Brown communicated with his counsel prior to, during, and after entering his Plea Agreement. Brown's counsel testified that he communicated repeatedly with Brown through Skype and by visiting him at the Grayson County Detention Center. While Brown clearly thinks that his counsel led him astray, Brown does not argue that his counsel refused to file the motion to withdraw his guilty plea. Whether Brown's

retained counsel provided good advice prior to Brown entering his Plea Agreement is not relevant to whether Brown had a good reason for delay *after* his plea had been entered.

The court found that while Brown was undoubtedly under emotional stress in light of the significant sentence he faced, there was no indication that he was unable, as a consequence of that stress, to communicate to his attorneys his desire to withdraw his plea.

*Maintaining innocence*. The district court also found that Brown had not consistently maintained his innocence inasmuch as he admitted that he supplied the drugs to the woman who suffered an overdose and that those drugs contained fentanyl. Brown claims again on appeal that he has maintained his innocence, but in fact he swore to his guilt under oath and he has provided no "believable, valid reason justifying a departure from the apparent truth of those statements." *See United States v. Owen*, 215 F. App'x 498, 502 (6th Cir. 2007). The purportedly believable, valid reason that Brown offers is that he was under pressure from his counsel to plead guilty. But by his own accounting that "pressure" never amounted to anything more than his attorneys' assessment of his chances in the case. The district court did not abuse its discretion by finding Brown's purported reason for swearing falsely under oath less than believable and valid.

*Circumstances surrounding guilty plea*. The district court found no indication that Brown's guilty plea was unknowing or involuntary. The competency standard for pleading guilty is "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as functional understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (citation and internal quotation marks omitted); *see also United States v. Hawkins*, 8 F. App'x 332, 334 (6th Cir. 2001). The district court examined Brown's competence before accepting his plea, as is required under Rule 11(b) of the Federal Rules of Criminal Procedure. Brown was asked several questions about

his background and how well he understood the Plea Agreement. His answers demonstrated that he was able to understand the district court's questions and respond. Brown told the district court, under oath, that he understood the Plea Agreement, and that he was pleading guilty voluntarily.

Brown now points to the fact that his Plea Agreement contains factual and legal errors. The factual basis for the offenses contained in the Plea Agreement indicates that, while in the hospital, "[t]he victim identified her source of supply as the Defendant." Detective Bowles testified that in fact the victim initially identified another individual as the source of her drugs and only later identified Brown. The district court found this error to be immaterial.

We agree. What matters is whether the presence of factual errors indicates that Brown's plea was involuntary or unknowing. An error regarding the *timing* of the victim's identification of Brown does not undermine our confidence that Brown knew to what he was pleading. Moreover, Brown answered affirmatively to the following question:

> The first substantive count, Count 2, alleges that you knowingly and intentionally distributed a mixture or substance that contained fentanyl, and you acknowledge that the substance actually contained fentanyl that was distributed, and it also alleges that the use resulted in serious bodily injury to the person that you've identified. Do you acknowledge that as well?

Brown knew that he was pleading guilty to providing the drugs that were involved in the victim's overdose.

Brown also points out that the Plea Agreement contains a reference to 21 U.S.C. § 846, which concerns conspiracy. That section would be relevant only if Brown pleaded guilty to the conspiracy charge in Count 1. But in his Plea Agreement Brown pleaded guilty only to Counts 2 and 4. The district court found that the reference to § 846 was merely an error. Brown did not plead guilty to Count 1 at all, regardless of the mistaken inclusion of § 846 in the Plea Agreement. The district court did not abuse its discretion by declining to infer from a typographical error that Brown's guilty plea was not done in "a fully knowing and intelligent manner."

Brown claims that his emotional difficulties create "a question of Brown's ability to fully comprehend the nature of the guilty plea." Brown's own counsel determined that he did not require a mental health evaluation prior to entering his guilty plea. His attorneys stated: "[w]e saw no issues at the time of entering into the plea that made us believe that he was not of sound mind and that he was doing this for any other reason other than freely, voluntarily, knowingly, and it was our advice to do so." When he pleaded guilty, Brown told the district court that, beyond heroin addiction, he had not been treated for any mental health issues.[3] The district court was not wrong to find that Brown's emotional stress did not prevent him from understanding the nature of his plea.

*Brown's nature and background*. On appeal, Brown argues that, because of his limited education, his guilty plea was not knowing and voluntary. The district court was justified in concluding that Brown's limited education did not render his guilty plea less than knowing and voluntary. Brown testified that he is able to "read and write." Moreover, the district court ensured that Brown had both read the Plea Agreement and discussed it with his counsel prior to entering his guilty plea. The district court also had the Plea Agreement verbally summarized for Brown, paragraph by paragraph, before he entered his plea.

*Brown's prior experience with the criminal justice system*. The district court also cited Brown's extensive criminal background as evidence that he understood the ramifications of his guilty plea. On appeal, Brown points out that his extensive criminal history is exclusively within the state system, therefore mitigating the helpfulness of that experience in the federal context.

---

[3] The record does indicate, however, that Brown may have attempted suicide in 2007, and that he informed staff at the Grayson County Detention Center that he was considering committing suicide. While this information was no doubt concerning, the district court did not abuse its discretion by finding that Brown did not lack the "present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as functional understanding of the proceedings against him." *See Godinez*, 509 U.S. at 397 (citation and internal quotation marks omitted).

Regardless, this factor does not weigh in Brown's favor, and the district court did not err in considering Brown's state criminal history.

The district court declined to consider the last factor, potential prejudice to the government, because that factor is irrelevant unless and until Brown shows a fair and just reason for allowing withdrawal of his plea. *See United States v. Wynn*, 663 F.3d 847, 850 (6th Cir. 2011).

The district court determined that Brown had not shown a fair and just reason to allow him to withdraw his guilty plea. The district court did not abuse its discretion in reaching that conclusion.

**III.**

The district court's judgment is **AFFIRMED**.