NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0220n.06

Case No. 20-5564

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| MICHAEL ANGELO WILLIAMS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

FILED
Apr 23, 2021
DEBORAH S. HUNT, Clerk

BEFORE: GUY, DONALD, and MURPHY, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Michael Angelo Williams pleaded guilty to a conspiracy charge and several drug-distribution charges. Months later, Williams twice moved to withdraw his guilty plea as to the conspiracy charge, but the district court denied his withdrawal requests. Following Williams' failed attempts to proceed to trial after entering his plea, the district court sentenced him to 150 months' imprisonment. Williams now challenges the district court's denial of his motions to partially withdraw his guilty plea, as well as two aspects of his sentence. For the reasons stated below, we AFFIRM the district court's judgment.

**I.**

On August 8, 2019, Williams was charged in a five-count indictment with: conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846 (Count 1); distributing 50 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a) (Count 2); and distributing 5 grams or more

of methamphetamine on three separate occasions, in violation of 21 U.S.C. § 841(a) (Counts 3, 4, and 5). On October 9, 2019, Williams pleaded guilty to all five counts. After Williams' initial counsel withdrew from representing him, his new counsel filed a motion to withdraw Williams' guilty plea as to Count 1 on February 18, 2020. In his motion, Williams argued that there was no indicted co-defendant with whom he could have engaged in the conspiracy that he was charged with committing. Williams explained that he reached this conclusion only after independently researching potential defenses, and informed his second counsel of this possible defense immediately upon making this discovery. The district court denied Williams' motion, finding that based on its evaluation of the relevant factors, Williams did not demonstrate that there was a fair and just reason supporting the withdrawal of his plea pursuant to Fed. R. Crim. P. 11(d)(2)(B).

Undeterred by this ruling, Williams filed a second motion to withdraw his guilty plea to Count 1 on May 7, 2020. In this motion, Williams contended that he did not knowingly and voluntarily enter his guilty plea because there were allegedly discrepancies relative to Count 1 that his original counsel should have explored. According to Williams, he entered his plea without the benefit of reviewing all of the discovery in his case, which did not transpire until his second counsel provided him with all documents tendered by the government. The district court was unconvinced by Williams' argument, and held that in addition to the fact that Williams could not adequately describe any alleged "discrepancies" that should have been further examined by his initial counsel, he again failed to meet his burden of proving that the withdrawal of his plea was for a fair and just reason.

Subsequent to these denials, the case proceeded to the sentencing phase. During Williams' sentencing hearing on May 13, 2020, the district court addressed the presentence report's recommendation that Williams' Guidelines offense level should be increased by two points

because of his alleged firearm possession. FBI Task Force Officer, Mark Stidham, testified at the hearing with regard to his role in the investigation that led to Williams' arrest. Stidham testified that a confidential informant notified him that when the informant purchased methamphetamine from Williams on July 17, 2019 at Williams' apartment, the informant observed a "black and silver handgun" sitting on a table in the residence. Stidham also testified that while he was searching Williams' car on August 14, 2019—the car which Williams used to drive to and from participating in several controlled drug buys—he recovered a loaded "black and silver handgun" underneath the steering wheel in the vehicle. Finally, Stidham additionally testified that when he was executing a search warrant on Williams' apartment on August 13, 2019, he retrieved Winchester Smith & Wesson .40 caliber bullets—the same type of bullets as those in the firearm found in Williams' vehicle the next day.

The district court ruled that although there was a gap in time—between when the informant saw the firearm in July 2019 and when Stidham located the firearm in Williams' vehicle in August 2019—the evidence set forth indicated that Williams possessed a weapon during drug trafficking. Consequently, the district court determined that the two-level enhancement was warranted. Williams' total offense level of 29, combined with his criminal history category of V, yielded an advisory Guidelines range of 140 to 175 months' imprisonment.

The district court then applied the 18 U.S.C. § 3553(a) factors before issuing Williams' sentence. With respect to the nature and circumstances of the charged offenses, the district court articulated that Williams' crimes—dealing in actual methamphetamine on different occasions—constituted serious offenses. Williams' personal circumstances were also considered by the district court, including the fact that Williams only had a tenth-grade education. The district court additionally acknowledged that it considered the need to protect the public, stating that Williams

had twenty-two prior adult convictions—which included unlawful firearm possession convictions—and had a history of recidivism. After evaluating the totality of the § 3553(a) factors, the district court sentenced Williams to 150 months' imprisonment for each of the counts, all of which would run concurrently. The district court also mentioned that even if it was decided on appeal that the two-level sentencing enhancement was applied erroneously, it would still impose a 150-month sentence upon remand, as without the enhancement, Williams' Guidelines range would have been 120 to 150 months' imprisonment. This timely appeal followed.

## II.

### A.  Withdrawal of the Guilty Plea

Williams first argues that the district court erred by denying his motions to withdraw his guilty plea as to Count 1. We review such claims for an abuse of discretion. *United States v. Giorgio*, 802 F.3d 845, 848 (6th Cir. 2015). "Abuse of discretion results when the district court relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard." *United States v. Ellis*, 470 F.3d 275, 280 (6th Cir. 2006).

A defendant *may* withdraw his plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). As we have said previously, the purpose of this rule is "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (citation and internal quotation marks omitted). If a plea has been entered knowingly and voluntarily, "the occasion for setting aside a guilty plea should seldom arise." *Ellis*, 470 F.3d at 280 (quotation omitted).

There are several factors that this Court considers in these instances, including:

(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded on other grounds by statute as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000). This is "a general, non-exclusive list" and no single factor is controlling. *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). In the instant case, each of the factors weigh against Williams. We analyze each factor in turn.

### 1. Length of Delay

Williams filed his first motion to withdraw over four months after he pleaded guilty. Our Court has denied motions to withdraw guilty pleas where less time has elapsed between the guilty plea and the motion to withdraw the plea. *See, e.g.*, *United States v. Catchings*, 708 F.3d 710, 718 (6th Cir. 2013) (finding a delay of over two months favored the government); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir.1996) (finding a sixty-seven day delay favored the government); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (finding a five-week delay favored the government). This factor certainly weighs in favor of the government.

### 2. Reason for the Delay

Williams contends that the delay should be considered excusable because he did not realize he had not reviewed all of the discovery until he had a meeting with his initial counsel on January

13, 2020.[1] Even if the Court were to accept this contention as true, Williams does not explain *why* that had an effect on his ability to file either of his motions to withdraw his plea sooner than he did. Further, Williams fails to reveal what he learned through gaining access to all of the discovery documents that led him to attempt to amend his guilty plea. Williams' bare assertion does not qualify as a valid reason for his 132-day filing delay, and this factor therefore favors the government.

### 3. Assertion of Innocence

Williams claims that throughout his case, he has asserted his innocence by repeatedly arguing that the government could not prove he engaged in a conspiracy since there were no other individuals charged with conspiring with him. The Court is unpersuaded by Williams' argument. For one, during his rearraignment hearing on October 9, 2019, Williams openly admitted that he conspired with at least one other person to distribute and possess with intent to distribute at least 50 grams of methamphetamine. Williams' admission surely undermines his innocence claim. *See United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012) ("Statements of guilt under oath at a plea hearing support the district judge's decision not to permit withdrawal."). Moreover, Williams' contention that the government could not *prove* that he participated in the charged conspiracy solely because the government did not name an indicted co-defendant with whom Williams conspired is not an assertion of innocence—it is merely a flawed legal argument, *see United States v. Sachs*, 801 F.2d 839, 845 (6th Cir. 1986). This factor weighs in favor of the government.

---

[1] Williams does not reassert on appeal that his motions to withdraw his plea were timely because it was only after he pleaded guilty that he discovered a potential defense to the conspiracy charge. Accordingly, Williams has abandoned that argument. *United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006); Fed. R. App. P. 28(a)(8)(A).

### 4.  Circumstances Underlying the Guilty Plea

The district court thoroughly discussed Williams' options during the rearraignment hearing.  The district court informed Williams of his right to proceed to trial and the consequences of pleading guilty.  Furthermore, the record demonstrates that Williams entered his plea knowingly and voluntarily.  Williams' only contention to the contrary is that he entered his plea without the benefit of receiving or understanding all of the discovery.  As mentioned above, Williams does not explain why he was inclined to alter his plea after acquiring additional evidence through discovery.  This factor weighs in favor of the government.

### 5.  Williams' Nature and Background

Williams argues that this factor weighs in his favor because he had a tenth-grade education, never obtained his GED, and was labelled developmentally delayed in grade school.  The district court, however, found that "[h]is personal history and characteristics do not distinguish him from most offenders charged with similar offenses[.]"  We agree.  Nothing in the record demonstrates that Williams did not understand that he was entering a plea of guilt, and Williams responded affirmatively when asked during his rearraignment hearing if he understood his charges and the significance of pleading guilty.  *See Martin*, 668 F.3d at 796–97 (holding that this factor weighed against withdrawal where a defendant only had some high school education and comprehended that he was pleading guilty to the charges he faced).  This factor weighs in favor of the government.

### 6.  Williams' Prior Experience with the Criminal Justice System

At the time Williams pleaded guilty, he had twenty-two prior adult convictions, including various felonies and misdemeanors.  The record establishes that Williams was undoubtedly familiar with entering guilty pleas.  Moreover, we find that it is of no consequence that Williams had not been previously charged specifically with violating 21 U.S.C. § 846 because he had a

significant amount of experience with the criminal justice system. This factor strongly weighs in favor of the government.

### 7. Potential Prejudice to the Government if Either Motion to Withdraw is Granted

We have held that "the government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal[.]" *Spencer*, 836 F.2d at 240. Considering that six of the factors weigh against Williams, he has not sufficiently proven that there is a fair and just reason to allow him to withdraw his guilty plea. We therefore need not address this factor.

Accordingly, because none of the *Bashara* factors weigh in favor of allowing Williams to withdraw his guilty plea, we hold that the district court did not abuse its discretion in denying either of Williams' motions to withdraw his plea.

### B. Firearm Enhancement Under § 2D1.1(b)(1) of the Sentencing Guidelines

Williams next argues that the district court erred by applying a two-level dangerous-weapon enhancement to his sentence under § 2D1.1(b)(1) of the Guidelines. Specifically, Williams claims that the record does not demonstrate that he actually or constructively possessed a "firearm" as defined by the Guidelines, and if we find otherwise, alternatively, there was insufficient evidence to prove that he used a weapon during the commission of his charged offenses. *See United States v. McCloud*, 935 F.3d 527, 531 (6th Cir. 2019). In response, the government contends that even if the district court erred in this regard, such an error would be harmless.

We agree with the government, and find that even if the district court did erroneously apply the dangerous-weapon enhancement, that error would have been harmless. Our Court has held that any "[e]rrors that do not affect the ultimate Guidelines range or sentence imposed are harmless

and do not require resentencing." *United States v. Faulkner*, 926 F.3d 266, 275 (6th Cir. 2019). Here, when issuing Williams' sentence, the district court emphasized that if our Court were to rule that the imposition of the enhancement constituted error, it would nevertheless sentence Williams to 150 months' imprisonment.[2] Thus, because any error by the district court would have had no effect on Williams' ultimate sentence, we need not determine whether the district court accurately increased Williams' offense level pursuant to § 2D1.1(b)(1). *See United States v. Morrison*, 852 F.3d 488, 491 (6th Cir. 2017) ("If the record shows that the district court would have imposed its sentence regardless of the Guidelines range, then an error in calculating the Guidelines range is harmless.").

## C. Substantive Reasonableness

Williams additionally claims that his sentence was substantively unreasonable. We review whether a sentence was substantively reasonable under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). Sentences within the Guidelines are presumed reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc). A sentence may be substantively unreasonable if "the court placed too much weight on some of the § 3553(a) factors and too little on others[.]" *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018).

Williams asserts that his sentence was substantively unreasonable because the district court failed to adequately take his history and characteristics into consideration when sentencing him. In particular, Williams argues that the district court should have given more weight to his difficult childhood and lack of formal education. During Williams' sentencing hearing, the district court specifically stated that it evaluated Williams' individual circumstances—including his challenging

---

[2] The district court also clarified that in such scenario, a sentence at the high end of the 120-150 month Guidelines range would be appropriate given Williams' history of using and possessing handguns, substantial recidivism, and history of violating the conditions of his release.

upbringing and limited education. Williams' contention, therefore, is that the district court improperly balanced the sentencing factors, which is a claim that is "beyond the scope of our appellate review." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006); *see also Gall*, 552 U.S. at 51 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.").

Accordingly, Williams' 150 month within-Guidelines sentence was substantively reasonable.

**III.**

For the foregoing reasons, we AFFIRM the district court's judgment.